Submitted June 29, 2010, affirmed April 6, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DONNA COLLEEN TRYON,
*Defendant-Appellant.*

Multnomah County Circuit Court
080647670; A139914

255 P3d 498

Peter Gartlan, Chief Defender, and Irene B. Taylor, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Christina M. Hutchins, Senior Assistant Attorney General, filed the brief for respondent.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Rosenblum, Judge.

ROSENBLUM, J.

## ROSENBLUM, J.

Defendant appeals from a judgment imposing punitive sanctions against her for contempt based on her violation of a restraining order issued under the Elderly Persons and Persons with Disabilities Abuse Prevention Act. ORS 33.065; ORS 124.005 - 124.040. She asserts that the trial court erred by admitting into evidence the return of service of the restraining order, in violation of her right of confrontation under the Oregon and federal constitutions. Defendant's challenge under the Oregon Constitution was not preserved.[1] In addressing her challenge under the federal constitution, we affirm.

At the contempt trial, the state sought to establish defendant's knowledge of the restraining order by offering an unsworn return of service,[2] in which a deputy sheriff stated that he had served defendant with the restraining order on June 18, 2008.[3] Defendant objected based on hearsay and denial of her right of confrontation,[4] arguing that the return of service was testimonial evidence and that its admission

---

[1] Defendant's confrontation argument at trial focused only on the Confrontation Clause of the United States Constitution. We reach the conclusion that defendant's state constitutional argument was unpreserved pursuant to our "prudential obligation to determine *sua sponte* whether a contention has been preserved for appellate review." *State v. Tanner*, 236 Or App 423, 428, 236 P3d 775 (2009) (internal quotation marks omitted). Although there is no request for plain error review, we note that a finding of plain error in this case—which was submitted on the briefs—would be foreclosed by defendant's concession, on appeal, that the return of service was properly admitted as a public record under OEC 803(8)(b). *See State v. William*, 199 Or App 191, 197, 110 P3d 1114, *rev den*, 339 Or 406 (2005) (holding that admission of Intoxilyzer certificates under OEC 803(8)(b) without proof that the technician who prepared the documents was unavailable to testify did not violate Article I, section 11, "because the framers of the Oregon Constitution would have understood public and official records to have constituted an exception to the confrontation rights guarantee"); *see also State ex rel Juv. Dept. v. S. P.*, 346 Or 592, 600-07, 215 P3d 847 (2009) (discussing the "first things first" methodology).

[2] When seeking punitive sanctions in a contempt proceeding, the state must prove beyond a reasonable doubt "that a valid court order exists, that the defendant knew of the order, and that the defendant voluntarily failed to comply with it." ORS 33.065(9); *Frady v. Frady*, 185 Or App 245, 248, 58 P3d 849 (2002).

[3] The unsworn return of service provided, in part:

"I further certify that I served the papers upon

"TRYON, DONNA

"on the 18day [*sic*] of June, 2008 at 9:15:00AM * * *."

[4] Defendant does not renew her hearsay argument on appeal.

would violate her right to confront the witness against her—the deputy sheriff—under the Confrontation Clause of the Sixth Amendment to the United States Constitution.[5] The trial court overruled the objection and admitted the return of service. The court then concluded that defendant had willfully violated the restraining order and entered a judgment imposing punitive sanctions against her.

On appeal, defendant renews her argument that admitting the return of service as evidence that she knew of the restraining order was a violation of her Sixth Amendment right of confrontation. In *Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004), the United States Supreme Court held that the Confrontation Clause prohibits the admission of out-of-court statements that are testimonial in nature, unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination. *Id.* at 53-54. The state does not contend that the deputy sheriff was unavailable or that defendant had a prior opportunity to cross-examine him, so the only question is whether the deputy's unsworn statement contained in the return of service was testimonial. The state argues that it was not testimonial because (1) it was not an affidavit generated in response to a law enforcement or other prosecutorial request, and (2) it falls under a historical hearsay exception for public records, which, the state argues, are nontestimonial.

In *Crawford*, the Court described a testimonial statement as one made by an "accuser" that can be characterized as "a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* at 51 (internal quotation marks omitted). In *Melendez-Diaz v. Massachusetts*, 557 US ____ , ____ , ____ , 129 S Ct 2527, 2531-32, 2538-40, 174 L Ed 2d 314 (2009), the Court applied *Crawford* to documents, holding that the sworn certificates prepared to show the results of forensic analysis of seized substances in that case were testimonial statements.[6] In so holding, the Court

---

[5] The Sixth Amendment to the United States Constitution provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]"

[6] *Melendez-Diaz* was decided after the briefing was complete in this case.

rejected an argument that all evidence falling within the well-established hearsay exception for business records at common law is admissible absent confrontation. *Id.* at ____ , 129 S Ct at 2538. Business and public records generally do not raise confrontation concerns, the Court reasoned, "not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Id.* at ____ , 129 S Ct at 2539-40.

The Court in *Melendez-Diaz* went on to explain that the forensic certificates were made for the purpose of proving a fact at trial: (1) they were sworn affidavits, thus constituting formalized materials that contained "the precise testimony the analysts would be expected to provide if called at trial," *id.* at ____ , 129 S Ct at 2532; (2) they were prepared in response to an investigative law enforcement request, *id.* at ____ , 129 S Ct at 2535; and (3) under the relevant Massachusetts statute requiring production of the forensic certificates, the "*sole purpose*" of creating the certificates was to provide *prima facie* evidence in a criminal proceeding, *id.* at ____ , 129 S Ct at 2532 (emphasis in original). Based on those factors, the Court concluded that the forensic certificates in that case were documents created specifically for the purpose of being used by the prosecution at trial. Therefore, unlike other business and public records created for an administrative purpose, they constituted testimonial statements subject to confrontation under the Sixth Amendment. *Id.*

Although *Melendez-Diaz* rejected the argument that the state makes here—that all documents falling within the historical hearsay exception are admissible without confrontation—in this case, the return of service is readily distinguishable from the forensic certificates held to be testimonial in *Melendez-Diaz*. It was not made under oath and did not include any sworn testimony; thus it was not an affidavit. Nor was it prepared in response to a request made by law enforcement during the course of an investigation. In fact, the violation of the restraining order did not occur until well *after* the return of service was completed.

Further, unlike in *Melendez-Diaz*, the statutes that required production of the return of service in this case, ORS 124.020(7)(b) and ORS 124.030(1), demonstrate that the statement contained in the return of service was made for the purpose of "administration of an entity's affairs." *Melendez-Diaz*, 557 US at ____, 129 S Ct at 2539. Under ORS 124.020(7)(b), the county sheriff or another peace officer—in this case a deputy sheriff—has a legal duty to personally serve a restraining order and to make proof of that service.[7] After the person against whom the restraining order issues receives notice of its issuance, ORS 124.030(1), in turn, authorizes entry of the restraining order into the Law Enforcement Data System, which informs law enforcement agencies of the existence of the restraining order.

In construing proof of service provisions identical to those in ORS 124.020(7)(b) and ORS 124.030(1), we have held that service of a restraining order and making proof of that service constitutes the completion of "routine, nonadversarial matters" by a police officer. *Frady v. Frady*, 185 Or App 245, 250, 58 P3d 849 (2002).[8] Here, the return of service was issued in accordance with those same routine, nonadversarial tasks: serving the restraining order and making proof of that service, and triggering notification to law enforcement agencies that a restraining order has been issued.

■ The Supreme Court's recent decision in *Michigan v. Bryant*, ____ US ____, 131 S Ct 1143, ____ L Ed 2d ____

---

[7] ORS 124.020(7)(b) provides:

"The county sheriff shall serve the respondent personally unless the petitioner or guardian petitioner elects to have the respondent served personally by a private party or by a peace officer who is called to the scene of a domestic disturbance at which the respondent is present, and who is able to obtain a copy of the order within a reasonable amount of time. Proof of service shall be made in accordance with ORS 124.030."

[8] In *Frady*, we considered the purpose of completing a return of service under *former* ORS 107.718(6)(b) (2005), *renumbered as* ORS 107.718(7)(b) (2007), and ORS 107.720, respectively, to determine whether the return of service was admissible as a public record under OEC 803(8)(b). Defendant concedes on appeal, and we agree, that, under *Frady*, the return of service in this case was admissible under the Oregon Evidence Code as a business or public record. We expressly did not consider in *Frady* whether admission of the return of service violated the defendant's confrontation right under the Sixth Amendment, as the parties did not raise that argument on appeal. 185 Or App at 247 n 1.

(2011), is instructive. In *Bryant*, the Court held that a statement made in response to interrogation is subject to confrontation if, after an objective evaluation of the circumstances at the time the statement was made, it is found that the primary purpose of the statement was to create "an out-of-court substitute for trial testimony." *Id.* at ___ , 131 S Ct at 1155.[9] Although the Court in *Bryant* did not specifically address whether the confrontation inquiry for *interrogations* applies equally to *documents*, an objective evaluation of the circumstances in this case also leads us to conclude that the proof of service was not testimonial. Under the provisions of ORS 124.020(7)(b) and ORS 124.030(1), the primary purpose of making the statement contained in the proof of service was administrative. The record is devoid of additional circumstances that would suggest any reason for making the statement other than carrying out statutory duties. Thus, application of *Bryant*'s objective test supports our reasoning under *Melendez-Diaz*.

Finally, we reject defendant's argument that the return of service is testimonial because it falls within one of the "various formulations" of the core class of testimonial statements identified in *Crawford*, in particular, those statements "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." 541 US at 51-52. *Crawford* did not rely on that formulation in holding the statement in that case to be testimonial. In fact, *Crawford* expressly left "for another day" the task of defining "testimonial" beyond applying to, at a minimum, "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." 541 US at 68.

---

[9] As relevant to interrogations, an "objective evaluation" of the circumstances includes an assessment of the formality of the encounter, as well as the statements and actions of all participants. *Bryant*, ___ US at ___ , 131 S Ct at 1155-56, 1160. Standard rules of hearsay—"designed to identify some statements as reliable" —will also be relevant to determining the primary purpose of the statement. *Id.*; *see also id.* at ___ n 9, 131 S Ct at 1157 n 9 (citing *Melendez-Diaz*, 557 US at ___ , 129 S Ct at 2539-40, in support of the proposition that the business and public records exception to the hearsay rules "rest[s] on the belief that certain statements are, by their nature, made for a purpose other than use in a prosecution and therefore should not be barred by hearsay prohibitions").

In *Melendez-Diaz*, moreover, while referencing the above quoted "objective witness" formulation, the Court repeatedly emphasized that it was the *purpose for the creation* of the forensic certificates that ultimately rendered them testimonial. *See* 557 US at ___ , 129 S Ct at 2532 ("*sole purpose* of the affidavits was to provide 'prima facie evidence' " (emphasis in original)); *id*. at ___ , 129 S Ct at 2539 (certificates' sole purpose was to provide evidence against the defendant); *id*. at ___ , 129 S Ct at 2540 (certificates were "prepared specifically for use at petitioner's trial"). *Bryant* similarly focused on the objective purpose of the statement at the time it was made, not that statement's possible availability for use at a later trial. *Bryant*, ___ US at ___ , 131 S Ct at 1155 ("when a statement is not *procured* with a primary purpose of creating an out-of-court substitute for trial testimony" it is not testimonial (emphasis added)). Because the Court has not held, nor otherwise indicated, that a document created for an administrative purpose could later be rendered testimonial simply by the possibility that it may be used in a later criminal prosecution, we likewise refrain from doing so in this case. *See United States v. Orozco-Acosta*, 607 F3d 1156, 1163-64 (9th Cir 2010), *cert den*, ___ US ___ , 131 S Ct 946 (2011) ("*Melendez-Diaz* cannot be read to establish that the mere possibility that * * * any business or public record * * * could be used in a later criminal prosecution renders it testimonial under *Crawford*."); *United States v. Mendez*, 514 F3d 1035, 1046 (10th Cir), *cert den*, 553 US 1044 (2008) (similar). Our recent decisions are consistent with that conclusion.

In *State v. Bergin*, 231 Or App 36, 41, 217 P3d 1087 (2009), *rev den*, 348 Or 280 (2010), we held that unsworn Intoxilyzer certificates are not testimonial, distinguishing them from the forensic certificates in *Melendez-Diaz* by noting that Intoxilyzer certificates are not affidavits, are not used to directly prove an element of a crime, and, most importantly, are not created for a specific prosecutorial purpose but rather are only kept for *possible* use at trial. In *State v. Carter*, 238 Or App 417, 425, 241 P3d 1205 (2010), we held that an arrest warrant was not testimonial because it was a business record created for the purpose of causing the defendant to appear in court and not for the purpose of proving a fact at trial.

In both *Bergin* and *Carter*, as in *Melendez-Diaz*, the dispositive consideration was whether the documents were *created* for a prosecutorial purpose, not whether they had some future potential to be used in that manner if the need arose. *Cf. State v. Alvarez-Amador*, 235 Or App 402, 410-11, 232 P3d 989 (2010) (Social Security Administration representative's certification that particular Social Security numbers did not belong to the defendant was testimonial, because certification was prepared in response to a police officer's request to furnish evidence against the defendant).

In sum, the return of service was not testimonial, and its admission did not violate defendant's Sixth Amendment confrontation rights.

Affirmed.