Argued and submitted July 28, affirmed December 29, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

EDWARD ROGER COPELAND,
*Defendant-Appellant.*

Multnomah County Circuit Court
090647486; A143210

270 P3d 313

Kali Montague, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jeff J. Payne, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Sercombe, Judge.

HASELTON, P. J.

Sercombe, J., concurring.

## HASELTON, P. J.

Defendant appeals from a judgment imposing punitive sanctions against him for contempt of court, ORS 33.065, based on his violation of a Family Abuse Prevention Act (FAPA) restraining order, ORS 107.718. Defendant contends that the trial court erred by admitting the proof of service of the restraining order to show that he had knowledge of the restraining order. In that regard, defendant contends, in part, that admission of the proof of service violated his right to confront witnesses under Article I, section 11, of the Oregon Constitution because the state failed to establish that the deputy who had certified the proof of service was unavailable as a witness.[1] We conclude that, as a public record, the proof of service falls within a "historical exception" to Article I, section 11. *See, e.g., State v. William,* 199 Or App 191, 110 P3d 1114, *rev den,* 339 Or 406 (2005). Accordingly, the trial court did not err in admitting the proof of service, and we affirm.

The underlying facts are as follows. On April 30, 2009, defendant's wife, Copeland,[2] obtained a restraining order that, among other things, prohibited defendant from coming within 150 feet of her home, her workplace, and other locations that she frequented, including three bars in southeast Portland: the Savoy Tavern, the Night Light Lounge, and the Press Club. On May 1, Multnomah County Deputy Sheriff Schweitzer certified by proof of service that he had personally served defendant with the restraining order that same day.[3] On June 25, Copeland looked through the window

---

[1] Defendant also raises a confrontation challenge under the Sixth Amendment to the United States Constitution. We reject that challenge, without further discussion, for the reasons expressed in *State v. Tryon,* 242 Or App 51, 59, 255 P3d 498 (2011) (holding that the admission of a return of service of a restraining order did not violate the defendant's right to confrontation under the Sixth Amendment because a return of service is not testimonial).

[2] Although the two were still married at the time that Copeland obtained the restraining order and when defendant violated the order, they later divorced.

[3] ORS 107.720(1)(a) (2009) provides, in part:

"Whenever a [FAPA] restraining order * * * is issued and the person to be restrained has actual notice thereof, the clerk of the court or any other person serving the petition and order shall deliver forthwith to a county sheriff a true copy of the affidavit of proof of service on which it is stated that personal service of the petition and order was served on the respondent, a copy of the petition and a true copy of the order."

of the Clinton Street Pub, which is adjacent to the Savoy Tavern, and saw defendant seated at the bar. Copeland called the police, who came to the scene, reviewed her copy of the order, and then determined (by rolling a tape measure from one front door to the other) that the Clinton Street Pub was within 150 feet of the Savoy Tavern.

The police arrested defendant, and he was subsequently charged with violating the restraining order. The charging instrument alleged, in part, that defendant, *"having received notice of* [the FAPA restraining order] did * * * willfully enter * * * [and] remain at the area 150 feet from the Savoy Tavern"* in violation of the restraining order. (Emphasis added.)

At trial, the state offered the proof of service of the restraining order as evidence of defendant's knowledge of that order. In doing so, the state did not call Schweitzer as a witness or make any effort to establish that he was unavailable to testify. Defendant consequently objected to the admission of the proof of service as violating his confrontation rights under Article I, section 11, and the Sixth Amendment to the United States Constitution.[4] The state countered that the proof of service fell under the public records hearsay exception and, as such, was not subject to the confrontation protections of Article I, section 11. The court admitted the proof of service without stating the basis for admission and, ultimately, found defendant in contempt of court, for which the court imposed punitive sanctions.

On appeal, defendant renews his confrontation-based challenges to the admission of the proof of service in Schweitzer's absence and without proof of his unavailability. In particular, defendant asserts that, because he has the right "to meet the witnesses face to face," Article I, section 11,

---

We note that, although the legislature amended ORS 107.720 in 2011, those amendments apply only to protective orders entered on or after the effective date of the legislation—that is, January 1, 2012. Or Laws 2011, ch 269, §§ 1, 9.

[4] Article I, section 11, provides, in relevant part, "In all criminal prosecutions, the accused shall have the right * * * to meet the witnesses face to face[.]"

The Sixth Amendment provides, in relevant part, "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]"

the state was required to either produce Schweitzer as a witness or prove that he was unavailable to testify. The state, invoking *State v. Conway*, 70 Or App 721, 690 P2d 1128 (1984), *rev den*, 298 Or 704 (1985), and *William*, 199 Or App 191, contends that Article I, section 11, is inapposite to public records. Defendant remonstrates that those cases do not sweep as broadly as the state suggests and merely hold that confrontation protections do not apply when a public record is offered to prove a *"collateral"* matter. Conversely, defendant asserts, when a public record is submitted as proof of an essential element of the charged misconduct—here, defendant's knowledge of the restraining order[5]—Article I, section 11, requires the state to establish the declarant's unavailability. As so joined, the parties' dispute centers on *Conway* and *William*, which each invokes as supporting its position. For the reasons that follow, we conclude that those cases—and *William* in particular—unambiguously and conclusively corroborate the state's position.

Two overarching principles inform our analysis. *First*, as a general matter, when the state seeks to present otherwise admissible hearsay statements in the declarant's absence, Article I, section 11, precludes the admission of that evidence unless the state establishes that (a) the declarant is unavailable to testify and (b) the statements bear adequate indicia of reliability," *e.g.*, that the evidence "falls within a firmly rooted hearsay exception" or has "particularized guarantees of trustworthiness." *State v. Campbell*, 299 Or 633, 648, 705 P2d 694 (1985) (adopting the two-part test from *Ohio v. Roberts*, 448 US 56, 66, 100 S Ct 2531, 65 L Ed 2d 597 (1980)) (internal quotation marks omitted);[6] *see also State v. Moore*, 334 Or 328, 340, 49 P3d 785 (2002) (reiterating the unavailability requirement).

---

[5] *See, e.g., Frady v. Frady*, 185 Or App 245, 248, 58 P3d 849 (2002) ("To prove contempt, the state must establish that a valid court order exists, *that the defendant knew of the order*, and that the defendant voluntarily failed to comply with it. When a punitive sanction is sought, the state is obligated to prove every element of contempt beyond a reasonable doubt." (Citation omitted; emphasis added.)).

[6] *Ohio v. Roberts* was subsequently abrogated by *Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004). However, the Oregon Supreme Court has reiterated its adherence to *Campbell* in post-*Crawford* decisions. *See State v. Birchfield*, 342 Or 624, 629-31, 157 P3d 216 (2007) (applying the two-part *Campbell* test).

*Second,* the confrontation protections of Article I, section 11—and, hence, the *Campbell/Moore* unavailability requirement—do not apply to all hearsay proffered by the prosecution in the declarant's absence. Rather, there were, and are, certain "historical exceptions" corresponding to types of hearsay that "the framers of the Oregon Constitution would have understood * * * to have constituted an exception to the confrontation rights guarantee." *William,* 199 Or App at 197; *see also State ex rel. Gladden v. Lonergan,* 201 Or 163, 177, 269 P2d 491 (1954) ("There is nothing to indicate that the framers of our constitution intended thereby to do away with the well-established exceptions to the confrontation rule."); *cf. State v. Saunders,* 14 Or 300, 305, 12 P 441 (1886), *overruled in part on other grounds by State v. Marsh,* 260 Or 416, 490 P2d 491 (1971), *cert den,* 406 US 974 (1972) (stating that the confrontation rule "does not apply to such documentary evidence to establish collateral facts, as would be admissible under the rules of the common law in other cases").

The inquiry in this case reduces to whether the submission of a public record to establish an essential—as opposed to "collateral"—fact in a criminal proceeding falls within such a "historical exception" to confrontation. We conclude that it does.

We begin with *Conway,* which antedated *Campbell* and *Moore.* There, we held, in a DUII prosecution, that the admission of an Intoxilyzer certification under the public records hearsay exception did not offend Article I, section 11. *Conway,* 70 Or App at 724. In so holding, the totality of our pertinent discussion was as follows:

"The traditional hearsay rule and the many concepts attending it, including the official records exception, came into the law long before the adoption of the federal and state constitutions. As the Supreme Court pointed out in *State ex rel. Gladden v. Lonergan,* [201 Or at 176,] Article I, section 11, did not abolish the 'well-established exceptions' to the hearsay rule. One of the court's earliest discussions relating to historical exceptions is found in *State v. Saunders,* where the court upheld the constitutionality of the dying declaration exception:

" '[The Oregon Confrontation Right] does not apply to such documentary evidence to establish collateral

facts, as would be admissible under the rules of the common law in other cases.' 14 Or at 305.

"Under that standard, there is no question but that the public records exception satisfies the constitution. As the state suggested in its brief, perhaps there is no other hearsay exception with a firmer basis in common law."

*Id.* (citations omitted; second brackets in original).

In *William*, another DUII case, we revisited the confrontation-related implications of the admissibility of Intoxilyzer certifications in the wake of *Campbell* and *Moore* and reiterated our holding in *Conway*. In doing so, we began, as in *Conway*, by noting that "Article I, section 11, 'goes no further in its protections than does the rule at common law; that its adoption carried with it the well-established exceptions to the hearsay rule as known to the common law.'" 199 Or App at 194 (quoting *Lonergan*, 201 Or at 176). As an example of "[o]ne such historical exception," we again, as in *Conway*, cited *Saunders* as recognizing such an exception for "'documentary evidence to establish collateral facts.'" *Id.* at 194-95 (quoting *Saunders*, 14 Or at 305).

We then turned to *Conway* itself. Proceeding from the premise that the Supreme Court in *Campbell* (and *Moore*) did not intend "to overrule its prior case law identifying the types of hearsay to which the confrontation protections of Article I, section 11, do not apply[,]" *William*, 199 Or App at 196, we concluded:

"*Conway* remains good law. Under *Conway*, the unavailability requirement that otherwise may apply under Article I, section 11, does not apply in this case, because the framers of the Oregon Constitution would have understood public and official records to have constituted an exception to the confrontation rights guarantee."

199 Or App at 197. That holding was stated in unqualified terms, without any reference to the use of public records only to establish "collateral" facts. Rather—and without any reference to, or discussion of, whether Intoxilyzer certifications pertained to proof of "collateral," as opposed to essential, facts in a DUII prosecution—we simply concluded that the

trial court did not err in admitting the Intoxilyzer certifications without requiring the oral testimony of the person who had prepared the certification. *Id.*

Defendant does not contend that *Conway* and *William* were erroneously decided and must be overruled. Nor do we understand defendant to contend that we erred in concluding that public records fall within a "historical exception" to confrontation. Rather, defendant asserts that, properly construed, those two cases limit that historical exception to circumstances in which public records are offered to establish a "collateral" matter. With respect, the plain language of our opinions does not bear such a construction, and our analysis does not admit to such a limitation.

That is so for two reasons. First, our discussion of *Saunders* and *Lonergan* in both *Conway* and *William* recognized that there are multiple "historical exceptions" to the confrontation protections of Article I, section 11, and that the exceptions for "documentary evidence to prove collateral matters" and for "public and official records" are distinct. Certainly the former is not limited to the latter, and nothing in our analysis qualified the latter with the former. Second, in a related sense, if we had understood and held the "official and public records" historical exception to be qualified by a "collateral use" limitation, we would, necessarily, have addressed how, or why, the proof of Intoxilyzer certifications in a DUII prosecution could properly be deemed to pertain to a "collateral" fact. Indeed, if that were our understanding and intent, one would reasonably expect our opinions to have addressed, as a threshold matter, the distinction between "collateral" and "noncollateral" (essential) facts. But we did not do so.[7]

In sum, *William* and *Conway* are straightforward and unqualified in their holdings that "the framers of the

---

[7] We note further that nothing in the briefs submitted in *Conway* or *William* asserted that the admissibility of the Intoxilyzer certifications depended on such a "collateral" versus a "noncollateral" distinction. Appellant's and Respondent's Briefs, *State v. Conway*, 70 Or App 721, 690 P2d 1128 (1984), *rev den*, 298 Or 704 (1985) (CA A32361); Appellant's and Respondent's Briefs, *State v. William*, 199 Or App 191, 110 P3d 1114, *rev den*, 339 Or 406 (2005) (CA A119224).

Oregon Constitution would have understood public and official records to have constituted an exception to the confrontation rights guarantee." *William*, 199 Or App at 197. As noted, defendant has not urged us to overrule those holdings, much less demonstrated that they were "plainly wrong."[8] Consequently, the court did not err in admitting the proof of service to show defendant's knowledge of the restraining order.

Affirmed.

**SERCOMBE, J.,** concurring.

I concur with the majority's analysis. This court decided in *State v. William*, 199 Or App 191, 110 P3d 1114, *rev den*, 339 Or 406 (2005), that the production of a declarant at trial or a showing of his or her unavailability was not a necessary predicate to admission of a hearsay statement by that declarant in a public record under Article I, section 11, of the Oregon Constitution. We reached that conclusion notwithstanding the seemingly broad requirement in *State v. Moore*, 334 Or 328, 341, 49 P3d 785 (2002), that, "[b]efore the state may introduce into evidence a witness's out-of-court declarations against a criminal defendant, the state must produce the witness at trial or demonstrate that the witness is unavailable to testify." We qualified that holding in *William*:

> "Again, we hesitate to read the Supreme Court's decision too broadly. As in [*State v.*] *Campbell*[, 299 Or 633, 705 P2d 694 (1985)], the issue before the court in *Moore* was narrow. It did not involve the sort of historical exception that is involved in this case [(the public records exception)] and that the court recognized in prior cases such as [*State v.*] *Saunders*[, 14 Or 300, 12 P 441 (1886), *overruled in part on other grounds by State v. Marsh*, 260 Or 416, 490 P2d 491 (1971), *cert den*, 406 US 974 (1972),] and [*State ex rel.*] *Gladden* [*v. Lonergan*, 201 Or 163, 269 P2d 491 (1954)], in which the court held that '[t]here is nothing to indicate that the framers of our constitution intended thereby to do away with the well-established exceptions to the confrontation rule.' [*Lonergan*], 201 Or at 177. In fact, the *Moore* court

---

[8] *See, e.g., Aguilar v. Washington County*, 201 Or App 640, 648, 120 P3d 514 (2005) (stating that we will not overrule our own statutory interpretations "unless they are plainly wrong").

cited both cases, without suggesting that either was no longer good law. 334 Or at 339-40."

199 Or App at 197.

As I say, *William* decided the issue in this case. However, I suspect that the Supreme Court's requirement of production or unavailability in *Moore* was intended to be broader in effect than we acknowledged in *William*. In *State v. Birchfield*, 342 Or 624, 631-32, 157 P3d 216 (2007)—a case that *did* involve the admissibility of hearsay in a public record under Article I, section 11—the court flatly stated:

> "We hold that the trial court's admission of the laboratory report without requiring the state to produce at trial the criminalist who prepared the report or to demonstrate that the criminalist was unavailable to testify violated defendant's right to confront the witness against him under Article I, section 11, of the Oregon Constitution."

Indeed, had the Supreme Court applied the confrontation rule that it espoused in *Lonergan*, the result in *Birchfield* would have been different.

Given our analysis in *William*—that the court's unequivocal requirement of production or unavailability of a declarant to admit hearsay under Article I, section 11, in *Moore* was really equivocal—we presumably must conclude that the court's unequivocal holding in *Birchfield* is also subject to caveat. In light of *Birchfield*, however, I am not sure that the analysis in *William* continues to be correct. For that reason, I concur with misgivings.