280 P.3d 635

**STATE of Arizona, Appellee,**

v.

**Corey Demar SHIVERS, Appellant.**

**No. 1 CA–CR 10–0974.**

Court of Appeals of Arizona,
Division 1, Department A.

June 28, 2012.

Thomas C. Horne, Attorney General By Kent E. Cattani, Chief Counsel, Criminal Appeals/Capital Litigation Division, Matthew Binford, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender, By Cory Engle, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

TIMMER, Presiding Judge.

¶ 1 A jury convicted Corey Demar Shivers for interfering with judicial proceedings after he violated the terms of an order of protection by contacting the victim in this case. The issue before us is whether the trial court violated Shivers' Sixth Amendment right to confront witnesses by admitting in evidence a written declaration of service of the order without testimony from the law enforcement officer who served Shivers or a showing the officer was unavailable and Shivers had a prior opportunity to cross-examine him. Applying the holdings in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), *Melendez–Diaz v. Massachusetts,* 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), *Bullcoming v. New Mexico,* —— U.S. ——, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011), and *Williams v. Illinois,* —— U.S. ——, 132 S.Ct. 2221, 183 L.Ed.2d 89 (2012), we hold the declaration was non-testimonial, and its admission in the absence of the officer's testimony or a showing he was unavailable and Shivers had been given a prior opportunity to cross-examine him did not violate Shivers' Sixth Amendment Confrontation Clause right.

## BACKGROUND

¶ 2 Prior to 2009, Shivers and the victim were involved in a romantic relationship that ended badly. On May 21, 2009, the victim obtained an order of protection (the "Order") from the superior court, which required Shivers to refrain from directly contacting her and to stay away from her residence for a period of one year from the date of service of the Order.

¶ 3 The State subsequently subpoenaed the victim to testify against Shivers in an unrelated matter scheduled to begin on November 2, 2009. Just prior to that proceeding, and while the Order remained in effect, Shivers sent three postcards to the victim's fa-

ther at the residence he shared with the victim. Each postcard threatened legal repercussions for the victim and her family should she testify against Shivers. As a result, the State charged Shivers with one count of influencing a witness and one count of interfering with judicial proceedings for violating the Order.

¶ 4 To prove interfering with judicial proceedings, the State was required to show that Shivers knowingly disobeyed the Order. Ariz.Rev.Stat. ("A.R.S.") § 13–2810(A)(2) (West 2012)[1] ("A person commits interfering with judicial proceedings if such person knowingly ... [d]isobeys or resists the lawful order, process or other mandate of a court...."). To establish Shivers' knowledge of the Order, the State offered at trial a declaration of service (the "Declaration") in which a law enforcement officer declared "under penalty of perjury" he had served the Order on Shivers on May 21, 2009. The officer did not testify at trial, the State did not contend he was unavailable to attend the trial, and no other evidence showed Shivers had been served with the Order. Shivers objected to admission of the Declaration on Sixth Amendment grounds, arguing it was admissible only if he could cross-examine the officer who created it. The court overruled the objection and admitted the Declaration as a self-authenticating document under Arizona Rule of Evidence 902.

¶ 5 The jury ultimately found Shivers guilty of both counts. After sentencing and post-trial proceedings, this timely appeal followed. Shivers only challenges his conviction and resulting sentence for interfering with judicial proceedings.

1. Absent material revision after the date of an alleged offense, we cite a statute's current version.

2. Shivers does not contest that the Declaration qualified as a self-authenticating document pursuant to Arizona Rule of Evidence 902.

3. The Court described "[v]arious formulations" of a "core class" of testimonial statements: (1) statements constituting the functional equivalent of in-court testimony, "such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar

## DISCUSSION

¶ 6 Shivers argues the trial court violated his Sixth Amendment right to confront witnesses by admitting the Declaration without testimony from the officer because it was created solely for use in a later prosecution and was therefore testimonial in nature.[2] We review claims of Confrontation Clause violations de novo. *State v. King,* 213 Ariz. 632, 636, ¶ 15, 146 P.3d 1274, 1278 (App. 2006).

¶ 7 The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI; *Pointer v. Texas,* 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). In *Crawford v. Washington,* 541 U.S. at 51, 68, 124 S.Ct. 1354, the Supreme Court construed this guarantee as applicable to "testimonial" evidence, which it described as a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." Thus, a court may not admit testimonial statements made by a person who does not testify at trial unless that person is unavailable and the defendant had a prior opportunity for cross-examination. *Id.* at 53–54, 124 S.Ct. 1354. Although the Court gave various formulations of "testimonial" evidence,[3] it "[left] for another day any effort to spell out a comprehensive definition of 'testimonial.'" *Id.* at 68, 124 S.Ct. 1354.

¶ 8 Subsequent Supreme Court decisions have provided additional guidance in distinguishing testimonial and non-testimonial statements made in business and public records. Five years after *Crawford,* in a drug prosecution, the Court held that affidavits

pretrial statements that declarants would reasonably expect to be used prosecutorially;" (2) out-of-court statements within "formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions;" (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial;" and (4) "[s]tatements taken by police officers in the course of interrogations." *Crawford,* 541 U.S. at 51–52, 124 S.Ct. 1354 (citations omitted).

from laboratory analysts avowing that a substance seized from a defendant was cocaine were testimonial, thereby triggering the defendant's right to confront and examine the affiants before admission of the affidavits. *Melendez–Diaz*, 129 S.Ct. at 2532. The Court stated that business and public records typically do not invoke Sixth Amendment protections "not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Id.* at 2539–40. But the analysts' affidavits were functionally equivalent to in-court testimony, the Court reasoned, because they were made under circumstances that would have led an objective observer to believe they were prepared for trial, and, by law, they served solely to "provide prima facie evidence of the composition, quality, and the net weight" of the tested substance. *Id.* at 2532 (internal quotation marks and citation omitted). Thus, *Melendez–Diaz* clarified that "[a] document created solely for an 'evidentiary purpose,' ... made in aid of a police investigation, ranks as testimonial." *Bullcoming*, 131 S.Ct. at 2717 (citing *Melendez–Diaz*, 129 S.Ct. at 2532).

¶ 9 *Bullcoming v. New Mexico* addressed the admissibility of a certified forensic report, which set forth an analysis of blood for a DUI prosecution, through testimony of a scientist who neither signed the certification nor attended the test but was familiar with the testing mechanism. 131 S.Ct. at 2710. The Court concluded the certification, like the ones at issue in *Melendez–Diaz*, was testimonial. *Id.* at 2716–17. It then held the Sixth Amendment required the defendant to be able to confront and cross-examine the person who performed the analysis and signed the certificate. *Id.* at 2715–16; *see*

*also id.* at 2719 (Sotomayor, J., concurring in part and concurring in the judgment) (agreeing with majority that certified report was testimonial as its primary purpose was evidentiary).

¶ 10 *Williams v. Illinois* is the latest Supreme Court opinion that addresses Confrontation Clause objections concerning evidence of a record. In that case, an expert witness testified during a rape trial that a DNA profile produced by Cellmark, a private laboratory, from vaginal swabs taken from the rape victim matched a DNA profile produced by a police laboratory from a sample of the defendant's blood. *Williams*, 132 S.Ct. at 2227–28. A plurality of the Court held the testimony did not violate the Confrontation Clause because "[o]ut-of-court statements that are related by the expert solely for the purpose of explaining the assumptions on which that opinion rests are not offered for their truth and thus fall outside the scope of the Confrontation Clause." *Id.* at 2228. Significantly for this case, the plurality further held that even if the prosecution had elicited testimony about the Cellmark report to establish its truth, the Confrontation Clause would not have been violated. *Id.* at 2242–43. The plurality applied an objective test to determine "the primary purpose that a reasonable person would have ascribed to the [out-of-court] statement, taking into account all of the surrounding circumstances." *Id.* at 2243.[4] Because the primary purpose of the Cellmark report "was not to accuse [defendant] or to create evidence for use at trial," Cellmark technicians had no incentive to fabricate the report, and the Court concluded that use of the report " 'bears little if any resemblance to the historical practices that the Confrontation Clause aimed to eliminate.' "[5] *Id.* at at 2243–44 (quoting *Bryant*, 131 S.Ct. at 1167 (Thomas, J., concurring)).

---

4. Similarly, in the context of police interrogations, the Court has held that a statement is testimonial if, under an objective evaluation of the particular circumstances, the primary purpose of procuring the statement was to create "an out-of-court substitute for trial testimony." *Michigan v. Bryant*, —— U.S. ——, 131 S.Ct. 1143, 1155, 179 L.Ed.2d 93 (2011); *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) (defining "testimonial" statements made during police questioning as

those given primarily for the purpose of establishing past events potentially relevant to a later prosecution and "non-testimonial" statements as those having the primary purpose of enabling police to respond to emergencies).

5. Although a majority of the *Williams* Court agreed a court should assess the primary purpose of an out-of-court statement to decide whether it is testimonial, a majority did not agree

¶ 11 Applying the holdings in *Melendez–Diaz*, *Bullcoming*, and *Williams*, we examine the circumstances surrounding creation of the Declaration to determine whether it primarily served an administrative or prosecutorial purpose. In doing so, we bear in mind that the mere possibility a record might later be used in a future prosecution does not necessarily render it testimonial. *See United States v. Mendez*, 514 F.3d 1035, 1046 (10th Cir.2008) ("That a piece of evidence may become 'relevant to later criminal prosecution' does not automatically place it within the ambit of 'testimonial.' ... [Otherwise,] any piece of evidence which aids the prosecution would be testimonial and subject to Confrontation Clause scrutiny."). Thus, this court has held that maintenance and calibration records of breath-testing machines, even though "undoubtedly [ ] created with an understanding that they may be used in court" as foundation for the breath-test results, are non-testimonial because they are created to serve the primarily administrative purpose of assuring accuracy of each testing device without being "aimed at a particular defendant or related to a specific case." *Bohsancurt v. Eisenberg*, 212 Ariz. 182, 187, 190, ¶¶ 17–18, 29, 129 P.3d 471, 476, 479 (App. 2006); *see also State v. Lindner*, 227 Ariz. 69, 71–72, ¶ 8, 252 P.3d 1033, 1035–36 (App.2010) (concluding rationale of *Bohsancurt* survives *Melendez–Diaz* ). Similarly, records of prior convictions and Motor Vehicle Division records of license suspension are non-testimonial, even though they may later serve as proof of an element of a crime, because they "are created and maintained regardless of possible future criminal activity by the defendants" and "exist independently of any crimi-

nal prosecution." *King*, 213 Ariz. at 638, ¶¶ 24–25, 146 P.3d at 1280.

¶ 12 Examining the purpose of the Declaration under the circumstances of its creation, we decide the Declaration was non-testimonial because the officer primarily created it for an administrative purpose rather than a prosecutorial purpose. First, the creation and filing of the Declaration evidenced that Shivers was given fair notice of the Order, and the Declaration established the effective period for the Order for the benefit of both Shivers and the victim. A.R.S. § 13–3602(D), (K) (West 2012) (requiring service of an order of protection by county sheriff within one year of issuance and providing order becomes effective against defendant for one year commencing on the date of service). Indeed, the victim testified the Declaration provided her notice that Shivers was aware of the Order and knew to stay away from her. *See Commonwealth v. Shangkuan*, 78 Mass.App.Ct. 827, 943 N.E.2d 466, 472 (2011) (holding return of service non-testimonial because it primarily serves administrative purpose of "ensuring that the defendant received the fair notice to which he is statutorily and constitutionally entitled, establishing a time and manner of notice for purposes of determining when the order expires or is subject to renewal, and assuring the plaintiff that the target of the order knows of its existence") (citations omitted).

¶ 13 Second, the Declaration triggered an administrative process to enable the county sheriff's office to verify the existence of the Order:

Each affidavit, acceptance or return of service shall be promptly filed with the clerk of the issuing court.... Within twenty-four hours after the affidavit, ac-

on the scope of this inquiry. The plurality asked whether the statement had "the primary purpose of accusing a targeted individual of engaging in criminal conduct." 132 S.Ct. at 2242; *see also id.* at 2250–51 (Breyer, J., concurring). Justice Thomas disputed that the primary purpose of a testimonial statement must be to target an individual rather than to establish a fact for potential use in a criminal prosecution. *Id.* at 2261–63 (Thomas, J., concurring). Although he disagreed Cellmark was not primarily concerned with producing evidence for a criminal prosecution, he concurred in the judgment because, in his opinion, a testimonial statement must bear indicia of

solemnity, which the Cellmark report lacked. *Id.* at 2261–65 (Thomas, J., concurring). The dissenting justices did not disavow the primary purpose test but criticized the plurality's description of it as including an inquiry whether the speaker intended to target a particular person. *Id.* at 2272–74 (Kagan, J., dissenting). We need not wade into the choppy waters left in the wake of *Williams'* discussion of the primary purpose test; applying any iteration of the test, we conclude the primary purpose of the Declaration was administrative rather than prosecutorial. *See infra* ¶¶ 12–14.

ceptance or return of service has been filed ... the court from which the order ... was issued shall forward to the sheriff of the county in which the court is located a copy of the order of protection and a copy of the affidavit or certificate of service of process or acceptance of service. On receiving these copies, the sheriff shall register the order.... The sheriff shall maintain a central repository for orders of protection so that the existence and validity of the orders can be easily verified....

A.R.S. § 13–3602(L). *See State v. Tryon,* 242 Or.App. 51, 255 P.3d 498, 500, 501–02 (2011) (reasoning return of service non-testimonial because it was created to serve administrative purpose of informing law enforcement agencies of the restraining order and was not produced at request of law enforcement).

¶ 14 In sum, the Declaration is like the maintenance and calibration records in *Bohsancurt* and the prior conviction and motor vehicle records in *King. See supra* ¶ 11. The Declaration was created and filed with the court to serve administrative purposes as required by statute and would have been created regardless whether Shivers later violated the Order. Shivers was not being investigated for violating the Order at the time

the Declaration was created and filed, and neither law enforcement nor the prosecution requested its creation. A reasonable person taking into account all surrounding circumstances would conclude the Declaration primarily served a contemporaneous administrative purpose rather than a prosecutorial one. *Bryant,* 131 S.Ct. at 1155. Although the possibility existed the Declaration could be used in a later prosecution if Shivers violated the Order, the Declaration remains non-testimonial because its purpose at the time of creation was not prosecutorial. *Shangkuan,* 943 N.E.2d at 472–73 (accepting the possibility the return of service could be used in later prosecution and noting the document would substitute as the "functional equivalent of the serving officer's live testimony," but holding the return remains non-testimonial because it was "not created solely for use in a pending criminal prosecution"). Courts from other jurisdictions have reached similar conclusions both in addressing proofs of service of orders of protection offered in later prosecutions for violating the orders, *see Tryon,* 255 P.3d at 502; *Shangkuan,* 943 N.E.2d at 475, and in analogous situations involving certificates of mailing notices of driver's license suspensions and deportation warrants.[6]

---

**6.** The following cases have held that certificates of mailing notices of driver's license suspensions are non-testimonial and admissible in criminal prosecutions for driving on a suspended or revoked license because they were created for primarily non-prosecutorial reasons: *State v. Murphy,* 991 A.2d 35, 42 (Me.2010) (holding certificate non-testimonial when "certificates are routinely prepared for nonprosecutorial purposes, such as administrative motor vehicle proceedings and insurance-related inquiries"); *People v. Espinoza,* 195 P.3d 1122, 1126–27 (Colo.App.2008) (concluding certificate non-testimonial when purpose is to record administrative status of defendant's driving privilege and is not a response to interrogation or request in ongoing prosecution). Other cases hold such certificates are testimonial when primarily created for a prosecution: *Commonwealth v. Parenteau,* 460 Mass. 1, 948 N.E.2d 883, 891 (2011) (holding certificate testimonial because "not created as part of the administration of the registry's regular business affairs, but for the purpose of establishing an essential fact at trial," but "[i]f such a record had been created at the time the notice was mailed and preserved by the registry as part of the administration of its regular business affairs, then it would have

been admissible at trial"); *People v. Pacer,* 6 N.Y.3d 504, 512, 814 N.Y.S.2d 575, 847 N.E.2d 1149 (2006) (stating certificate testimonial when "admittedly prepared at the People's request for use at trial"). *Compare People v. Nunley,* 294 Mich.App. 274, 819 N.W.2d 8, 2011 WL 4861858 (Mich.Ct.App. Oct. 13, 2011), *review granted by* 490 Mich. 965, 805 N.W.2d 851 (2011) (concluding certificate testimonial when it proves a necessary element of the offense and not required by statutory or administrative scheme, resulting in primary and sole purpose as proof of notice at trial), *with id.* (Saad, P.J., dissenting) (opining certificate non-testimonial because required as part of general administrative scheme and creation of certificate predated alleged offense).

Federal courts' treatment of warrants of deportation later used in prosecutions for illegal reentry into the United States is also in accord with our holding: *United States v. Orozco–Acosta,* 607 F.3d 1156, 1164 (9th Cir.2010) (concluding *Melendez–Diaz* does not mean warrant testimonial merely because it may be used in future prosecution); *United States v. Torres–Villalobos,* 487 F.3d 607, 613 (8th Cir.2007) (holding warrants non-testimonial because "primary purpose is to maintain records concerning the movements of aliens

## CONCLUSION

¶ 15 We hold the Declaration was non-testimonial because it was created primarily for an administrative purpose rather than for a prosecutorial purpose. Consequently, the trial court did not violate Shivers' Sixth Amendment right to confront witnesses by admitting the Declaration in evidence without the officer's testimony or a showing he was unavailable and Shivers had been given the opportunity to cross-examine him. We affirm Shivers' convictions and sentences.

CONCURRING: PATRICIA K. NORRIS and DONN KESSLER, Judges.

and to ensure compliance with orders of deportation, not to prove facts for use in future criminal prosecutions"); *United States v. Bahena–Cardenas,* 411 F.3d 1067, 1075 (9th Cir.2005) (stating "the warrant of deportation is nontestimonial because it was not made in anticipation of litigation, and because it is simply a routine, objective, cataloging of an unambiguous factual matter"). *See also United States v. Lang,* 672 F.3d 17, 23 (1st Cir.2012) (collecting cases).