Argued and submitted October 30, 2013, affirmed January 28, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

YEGOR O. VELYKORETSKYKH,
*Defendant-Appellant.*

Multnomah County Circuit Court
110646013; A149607

343 P3d 272

Eric J. Bergstrom, Judge.

Laura E. Coffin, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Joanna L. Jenkins, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and Haselton, Chief Judge, and Schuman, Senior Judge.

SCHUMAN, S. J.

---

\* Haselton, C. J., *vice* Wollheim, S. J.

## SCHUMAN, S. J.

Defendant appeals from a conviction for driving while his driver's license was suspended. ORS 811.182(1). At trial, he raised the affirmative defense that, when he was arrested on that charge, he had never received notice of the suspension. ORS 811.180(1)(b).[1] To disprove that defense, the state sought to introduce into evidence an official "Notice of Suspension" form, signed by a police officer, allegedly issued to defendant some months earlier as he was leaving the police station after a failed breath test. Defendant objected on the ground that the officer who signed the form was not present at trial, nor had the state demonstrated that the officer was unavailable and that defendant had had a prior opportunity to cross-examine him. Therefore, defendant argued that admitting the evidence violated his Sixth Amendment right to confront his accuser.[2] Defendant relied on *Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004), and subsequent Oregon and federal cases. The state responded that those cases applied only when the state sought

---

[1] ORS 811.180(1) provides, in part:

"[I]t is an affirmative defense to the offenses described in ORS 811.175 and 811.182 that:

"* * * * *

"(b) The defendant had not received notice of the defendant's suspension[.]"

[2] Defendant did not raise any argument under Article I, section 11, of the Oregon Constitution at trial or on appeal. This case thus presents an as-yet unresolved conflict. Under Oregon court's "first things first" doctrine, we have an obligation to address state constitutional law claims before federal ones. *See State v. Kennedy*, 295 Or 260, 266-67, 666 P2d 1316 (1983) ("[A]n Oregon court should not readily let parties, simply by their choice of issues, force the court into a position to decide that the state's government has fallen below a nationwide constitutional standard, when in fact the state's law, when properly invoked, meets or exceeds that standard.") On the other hand, the "preservation of error" requirement in ORAP 5.45, instructs us not to review an argument that has not been raised below. *See State v. Tryon*, 242 Or App 51, 53 n 1, 255 P3d 498 (2011) (deciding confrontation clause claim under Sixth Amendment without addressing unpreserved state constitutional claim). Resolving that question, however, should await either a Supreme Court decision or a situation in which the outcome of the state constitutional claim would be more beneficial to the claimant than the outcome under the federal claim. That is not the case here. As we explain below, the trial court did not violate defendant's Sixth Amendment rights. Under *State v. Copeland*, 353 Or 816, 306 P3d 610 (2013), we would almost certainly hold that the court did not violate defendant's rights under Article I, section 11, either. Thus, a decision whether to address the unpreserved state claim would be irrelevant to the outcome.

to introduce out-of-court "testimonial" evidence, and that the form was not testimonial. The court accepted the state's argument and admitted the evidence. Defendant subsequently moved for a judgment of acquittal (MJOA), arguing that, even if the form was admissible, the state nonetheless did not present constitutionally sufficient evidence that he had received it. The court denied defendant's MJOA, and the jury returned a guilty verdict. Defendant appeals, assigning error to the court's ruling that the form was admissible and the court's denial of his MJOA. We affirm.

Defendant was arrested for DUII on March 5, 2011. He failed the breath test and, as a consequence, his license was temporarily suspended. Before he left the police station, an officer filled out and signed multiple copies of an "Implied Consent Combined Report—Notice of Suspension" form ("Notice of Suspension" form) stating, among other things, that defendant had failed the breath test; that his license would be suspended until July 3, 2011; and that "[y]ou have been given a copy of this form." At the bottom of the form, the officer who administered the breath test, Hoesly, signed the following statement: "I affirm by my signature that the foregoing events occurred." Hoesly kept one copy of the form. Whether he gave defendant a copy became an issue when defendant was stopped for a traffic infraction during the suspension period and arrested for driving while suspended. At trial on that charge, defendant did not deny that he had been driving during the period when his license was suspended; rather, he relied on ORS 811.180(1)(b), which provides an affirmative defense to driving while suspended if "[t]he defendant had not received notice of the defendant's suspension." According to defendant, Hoesly never gave him a copy of the Notice of Suspension. To disprove that defense, the state offered the copy of the signed form that Hoesly had retained. Hoesly, however, was not present at trial and therefore was not subject to cross-examination, nor had defendant had the opportunity to cross-examine him before trial. Defendant objected to the admission of the form, relying on *Crawford.* In response, the prosecutor argued that *Crawford,* along with subsequent Oregon and federal cases, establish that a defendant's right to confront the author of a document applies only if that document contains a

statement that is "testimonial"—and that these same cases establish that the statement at issue in the present case was not. The court accepted the state's argument and admitted the evidence. Subsequently, in a MOJA, defendant raised the alternative argument that, even if the form was properly admitted, the state still failed to produce constitutionally sufficient evidence to defeat the affirmative defense. The court denied that motion. The jury found defendant guilty of misdemeanor driving while suspended, and the court sentenced him to a $500 fine. This appeal ensued.

In *Crawford*, involving a recording of a witness's out-of-court testimony, the Court held that a testimonial hearsay statement was inadmissible unless the state established that, with certain exceptions not relevant to the issue in this case, the declarant was both (a) unavailable, and (b) that the defendant had the opportunity to cross-examine him or her. 541 US at 68-69. The Court decided to "leave for another day any effort to spell out a comprehensive definition of 'testimonial.'" *Id.* at 68. Later, in *Melendez-Diaz v. Massachusetts*, 557 US 305, 307, 129 S Ct 2527, 174 L Ed 2d 314 (2009), the Court applied the *Crawford* analysis, not to the out-of-court oral statement of a witness, but to a document—in particular, to the forensic analysis of material seized by police, certifying that the material was cocaine. The *Melendez-Diaz* Court also attempted to define when such documentary evidence could be considered "testimonial." The Court noted several relevant factors: The statement was contained in a sworn affidavit, *id.* at 310; the statement was "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," *id.* at 311 (internal citations and quotations omitted); the statement would "serve as substantive evidence against the defendant whose guilt depended on [its] nonexistence," *id.* at 323.

The Oregon appellate courts have long struggled to decide whether the United States Supreme Court would regard certain documents as testimonial. In *State v. Norman*, 203 Or App 1, 125 P3d 15 (2005), *rev den*, 340 Or 308 (2006), and *State v. Bergin*, 231 Or App 36, 217 P3d 1087 (2009), *rev den*, 348 Or 280 (2010), we held that documents certifying that a breath-testing machine had been tested for

accuracy were not testimonial. Before *Melendez-Diaz*, and anticipating its outcome, we held in *State v. Miller*, 208 Or App 424, 439, 144 P3d 1052 (2006), that laboratory reports identifying seized material as a controlled substance were testimonial and therefore inadmissible. In *State v. Davis (A126406)*, 211 Or App 550, 552, 156 P3d 93 (2007), we held that an Oregon Department of Transportation printout of a defendant's driving record was not testimonial. *Davis* also presented the exact question presented in this case— the admissibility of a Notice of Suspension—but we did not reach that issue, because the defendant did not claim that she never received notice, nor did she assert the "no notice" defense at trial. *Id.* at 556. *State v. Alvarez-Amador*, 235 Or App 402, 404, 232 P3d 989 (2010), required us to decide whether a certification form from a custodian of records of the Social Security Administration, requested by a police officer for use in an identity-theft case and stating that the defendant used social security numbers that were not his, was testimonial. We held that it was testimonial. *Id.* at 410- 11. And in *State v. Tryon*, 242 Or App 51, 255 P3d 498 (2011), and *State v. Copeland*, 247 Or App 362, 270 P3d 313 (2011), *aff'd*, 353 Or 816, 306 P3d 610 (2013), we held that a return of service of a restraining order was not testimonial.

In deciding these cases, we relied on several characteristics of the various documents and the circumstances under which their use was challenged: whether the document at issue was a sworn affidavit, whether it was used to prove an element of the crime or violation at issue, whether it was provided in response to a request from law enforcement, and whether it was prepared in fulfillment of a statutory or regulatory duty as opposed to being prepared for litigation against a particular individual. In a thorough opinion affirming our Sixth Amendment decision in *Copeland*, the Supreme Court identified a variety of these factors, only some of which were present in the case:

"The Court in *Melendez-Diaz* further explained that the forensic certificates were made for the purpose of proving a fact at trial: (1) they were sworn affidavits, thus constituting formalized materials that contained 'the precise testimony the analysts would be expected to provide if called at trial,' [*Melendez-Diaz*, 557 US at 310]; (2) they were

prepared in response to an investigative law enforcement request; and (3) under the relevant Massachusetts statute requiring production of the forensic certificates, the 'sole purpose' of creating the certificates was to provide *prima facie* evidence in a criminal proceeding. *Id.* at 311.

"* * * * *

"[T]he certificate of service at issue here is readily distinguishable from the forensic certificates held to be testimonial in *Melendez-Diaz*. First, the certificate of service was not prepared in response to a request made by law enforcement during the course of an investigation. In fact, the violation of the restraining order did not occur until well after service was completed. Further, unlike in *Melendez-Diaz*, the statutes that required production of the certificate of service in this case, * * * demonstrate that the certificate was made for the primary purpose of 'administration of an entity's affairs.' *Melendez-Diaz*, 557 US at 324.

"* * * * *

"As discussed [in the portion of the opinion dealing with Article I, section 11], the primary purpose for which the certificate of service in this case was created was to serve the administrative functions of the court system, ensuring that defendant, the respondent in the restraining order proceeding, received the notice to which he is statutorily and constitutionally entitled, establishing a time and manner of notice for purposes of determining when the order expires or is subject to renewal, and assuring the petitioner that the subject of the order knew of its existence. It was foreseeable that the certificate might be used in a later criminal prosecution to furnish proof that defendant had notice that the order had been entered against him. However, the more immediate and predominant purpose of service was to ensure that defendant could—and would—comply with the order—that is, avoid a violation[.]

"* * * * *

"Because the [U.S. Supreme] Court has not held, nor otherwise indicated, that a document primarily created for an administrative purpose could be rendered testimonial merely by the possibility that it might be used in a later criminal prosecution, we likewise refrain from doing so in this case."

*Copeland*, 353 Or at 842-48.

From this treatment of the "testimonial or non-testimonial" question, we derive several precepts. First, a central question is whether the primary purpose of document at issue, under the circumstances of its creation, was for use in litigation, in which case it is testimonial, or to serve the administrative functions of the issuing entity, in which case it is not. The other factors mentioned in the case law are useful primarily because they provide guidance in answering that question. Thus, if a document is prepared with focus on a particular individual—for example, a document identifying a substance seized from that individual—the document is likely to be considered testimonial because an objective observer would conclude that the purpose of the document was to aid in the prosecution of that individual, whereas a document such as the routine certification of a breath-testing machine is likely nontestimonial. Similarly, a document prepared at the specific request of a law enforcement official, as opposed to one that is prepared pursuant to a statute or rule, is likely to be testimonial. A document that contains the sworn statement of the person who prepared or issued it is likely to have been made for use in court.

Second, an otherwise nontestimonial routine or ministerial document prepared pursuant to statute is not testimonial even if the preparer knows that the document *could* be used, and is used, in a future trial.

Applying those precepts, we conclude that the notice of suspension in the present case, like the return of service in *Copeland*, was not testimonial. It is true that it bears some of the characteristics of testimony. It is directly relevant to a fact that could determine whether defendant is guilty or not. Unlike, for example, the certification of a breath-testing machine, the notice of suspension was directed toward a particular individual. However, to the same extent that the return of service in *Copeland* was nontestimonial because its primary purpose "was to serve the administrative functions of the court system, ensuring that [the] defendant * * * received the notice to which he is statutorily and constitutionally entitled," 353 Or at 846, so too with the notice of suspension here. As was true with the return of service in *Copeland*, so too is it true that "[i]t was foreseeable that the [notice of suspension] might be used in a later criminal

prosecution to furnish proof that defendant had notice." *Id.* In sum, applying the Oregon Supreme Court's analysis of Sixth Amendment rights in the post-*Crawford* era, we conclude that the trial court did not err in allowing the state to enter into evidence the notice of suspension.

In a second assignment of error, defendant maintains that, even with the notice in evidence, he nonetheless was entitled to a judgment of acquittal. When an MJOA is based on an affirmative defense, the burden of establishing that defense falls on the defendant. "The state is not required to disprove an affirmative defense to sustain a guilty verdict; defendant must prove it. ORS 161.055(2)." *State v. McCartney,* 65 Or App 766, 769, 672 P2d 1210 (1983), *rev den,* 296 Or 638 (1984) (internal citations omitted). The only evidence that defendant presented in favor of his MJOA was his testimony that, although he received some papers from the police before leaving the station, the notice of suspension was not among them. The jury was entitled to disbelieve him. Further, regardless of where the burden fell, the state presented enough evidence—in particular, the copy of the notice of suspension and defendant's own testimony that he received a packet of papers at the police station—to allow a reasonable juror to conclude that defendant had, in fact, received it.

Affirmed.