Marcia MEOLI,
Trustee for Taunya Michelle Bucceri,
aka Taunya Michelle Fambrough,
*Appellant,*

*v.*

Michael Gene BROWN,
dba Baker's Train 'N Station,
*Respondent.*

00CV0063; A113571

114 P3d 507

Daniel W. Goff argued the cause and filed the briefs for appellant.

Cecil A. Reniche-Smith argued the cause for respondent. With her on the brief were Janet M. Schroer and Hoffman, Hart & Wagner, LLP.

Before Landau, Presiding Judge, and Brewer, Chief Judge,* and Armstrong, Judge.

LANDAU, P. J.

---

* Brewer, C. J., *vice* Leeson, J., pro tempore.

## LANDAU, P. J.

This is a negligence case brought by a debtor's trustee in bankruptcy. The trial court entered summary judgment dismissing the case on the ground that the action was time-barred. Plaintiff appeals, arguing that defendant's insurer had made "advance payments" to the debtor's medical providers that tolled the statute of limitations. Defendant argues that, under our case law, the payments that its insurer made were not the sort of payments that toll a statute of limitations. We agree with defendant and affirm.

The facts pertinent to the disposition of the appeal are not in dispute. In such cases, we review the trial court's entry of summary judgment to determine whether defendant was entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 407, 939 P2d 608 (1997); *Archambault v. Ogier*, 194 Or App 361, 363, 95 P3d 257 (2004).

Defendant operated a fitness and training facility, "Baker's Train 'N Station." The business was insured under a commercial liability policy issued by American States Insurance Company. Among other things, the policy provided a "medical expense limit (any one person)" of $5,000, payable for medical, surgical, ambulance, nursing, and related expenses incurred by third parties as a result of " 'bodily injury' caused by an accident" on defendant's premises. The policy further provided that the insurer "will make these payments regardless of fault."

In March 1990, the debtor was injured while exercising at defendant's facility. Pursuant to the insurance policy, defendant's insurer made payments to the debtor's medical providers for her medical expenses up to the policy limit of $5,000. The debtor was not aware that the insurer had paid those amounts.

In March 1992, the debtor brought a negligence action against "James R. Baker dba Baker's Train 'N Station." The trial court dismissed the action on the ground that it named the wrong party defendant.

In 1993, the debtor filed for bankruptcy protection in Michigan. Her petition listed the 1992 negligence action as an asset and assigned a zero value to it. Meanwhile, the debtor brought a malpractice action against the lawyers who had handled the 1992 negligence action. That matter was eventually settled. In the course of the settlement negotiations, the debtor became aware of the fact that defendant's insurer had made payments directly to her medical providers.

In 2000, plaintiff, the debtor's trustee, initiated this action for negligence against defendant. Defendant answered, alleging as an affirmative defense that the action had not been filed within two years as required by ORS 12.110(1). Defendant then filed a motion for summary judgment. Plaintiff invoked ORS 12.155 and argued that, because defendant's insurer had made payments to the debtor's medical providers, the statute of limitations had been tolled. Defendant responded that, as this court has previously held, the statute does not apply to payments that are required to be paid independently of fault. In any event, defendant argued, payment of the medical bills did not toll the statute because the debtor did not even know about the payments until after the statute had run. The trial court granted defendant's motion.

On appeal, plaintiff argues again that the two-year limitations period was tolled by the fact that defendant's insurer made what she characterizes as "advance payments." Plaintiff also argues that the insurer's failure to provide the notice required by the advance payment statute "lulled" the debtor into believing that the statute would be tolled. Defendant again responds, citing *Smith v. Riker*, 88 Or App 579, 746 P2d 247 (1987), *rev den*, 305 Or 273 (1988), that only "voluntary" payments made before a determination of contested liability toll the statute. In the alternative, defendant argues that the payment of medical benefits—with or without the required notice—could not have lulled the debtor into believing that it would not rely on the statute of limitations because she did not know about the payments until some six years later. In reply, plaintiff acknowledges our holding in *Smith*, but insists that the decision is distinguishable because the

payments at issue in that case were personal injury protection payments that were required *by statute*. In this case, plaintiff contends, the payments were made pursuant to a mere contractual provision. As for the fact that the debtor did not know about the medical payments, plaintiff argues that that factual issue remains in contention and may not be resolved on summary judgment.

Whether the statute of limitations was subject to the tolling effect of ORS 12.155 is a question of statutory construction that we address by applying the interpretive method set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). We begin with the text of the statute in context, including any prior judicial construction of the statute. *Blanton v. Beiswenger*, 195 Or App 335, 339, 97 P3d 1247 (2004).

ORS 31.555 provides that a party against whom an action for damages has been brought may make "advance payments." "Advance payments" are defined as "compensation for the injury or death of a person or the injury or destruction of property prior to the determination of legal liability therefor." ORS 31.550. Such "advance payments made for damages" are not an admission of liability by the person making the payments. ORS 31.560.

If judgment is eventually entered against that party, the amount of the judgment must be reduced by the amount of the advance payments. ORS 31.550(1). Likewise, if judgment is eventually entered against a party who is insured under a policy of liability insurance, the judgment must be reduced by the amount of any advance payments made. ORS 31.550(2).

Making an advance payment can have an effect on the running of an applicable statute of limitations. ORS 12.155 provides, in part:

"(1)  If the person who makes an advance payment * * * gives to each person entitled to recover damages [arising from the death or injury of a person or the injury or destruction of property], not later than 30 days after the date the first of such advance payments was made, written notice of the date of expiration of the period of limitation for the commencement of an action for damages set by the

applicable statute of limitations, then the making of any such advance payment does not suspend the running of such period of limitation. * * *

"(2)  If the notice required by subsection (1) of this section is not given, the time between the date the first advance payment was made and the date a notice is actually given of the date of expiration of the period of limitation for the commencement of an action for damages set by the applicable statute of limitations is not part of the period limited for commencement of the action by the statute of limitations."

In other words, if a person makes an advance payment to a "person entitled to damages" and gives the required notice about the applicable statute of limitations, then the limitations period is not tolled by the payment. If, on the other hand, the person making the payment fails to include the required notice, the limitations period is tolled until notice actually has been given.

The phrasing of the relevant statutes suggests that the "advance payments" to which the tolling effect of ORS 12.155 apply are payments for damages the liability for which ultimately depends on a determination of fault. The definition of the term itself refers to compensation for injury or death "before the determination of legal liability therefor." ORS 31.550. That is why ORS 31.560 provides that such advance payments are "not an admission of liability."

What the text suggests has been borne out by the case law interpreting it. In *Duncan v. Dubin*, 276 Or 631, 636, 556 P2d 105 (1976), the Supreme Court reviewed the text and the legislative history of ORS 12.155 and concluded that the legislation had a two-fold purpose:

"One was to allow an insurer to make advance payments without admitting liability for a claim and to encourage such payments by eliminating any apprehension on the part of the insurer that evidence of the advance payments could be admissible in court to prove liability. The other objective, which is clearly discernible, was to protect an injured party from being misled into believing that a limitation period upon his claim is no longer applicable because the insurer has, in effect, acknowledged that its insured is liable for the claim."

Citing *Duncan*, we concluded in *Smith* that ORS 12.155 does not apply to personal injury protection (PIP) payments. 88 Or App at 582. We explained:

> "The legislatively encouraged incentives to make advance payments are not applicable to the PIP statutory scheme. Under ORS [742.520], PIP benefits are payable to an injured person without consideration of fault or tort liability of the insured. The insurer must pay PIP benefits promptly on proof of loss. Its liability is contractual."

*Id.* Thus, in *Smith*, we concluded that PIP payments are not "advance payments" within the meaning of ORS 12.155, not because the payments are required by statute, but because they "are payable to an injured person without consideration of fault or tort liability of the insured." *Smith*, 88 Or App at 582.

Similarly, in *Ailes v. Portland Meadows, Inc.*, 118 Or App 517, 848 P2d 138, *rev den*, 318 Or 24 (1993), we concluded that payments that the defendant's insurer had made to a plaintiff under the terms of a policy that required the payments without regard to fault did not trigger the tolling effect of ORS 12.155. Citing *Duncan* and *Smith*, we reasoned that the critical factor was that the defendant's liability had no effect on the insurer's obligation to pay the benefits as the contract required. *Ailes*, 118 Or App at 523.[1]

Turning to the undisputed facts of this case, defendant's insurer made payments to the debtor's medical providers pursuant to a provision in the policy that required such payments "regardless of fault." *Duncan*, *Smith*, and *Ailes* are

---

[1] Actually, in that particular decision in *Ailes*, we simply adopted by reference Judge De Muniz's dissenting opinion in an earlier decision in the same case. In that dissenting opinion, Judge De Muniz had explained that

> "[p]ayments by the insurer were made in accordance with the contractual relationship between the insurer and plaintiff as the insured. Defendant's fault or lack of fault for plaintiff's injuries has no effect on the payment of benefits under the policy.

> "Therefore, on the merits, I would hold that payments made by the insurer to plaintiff were not subject to the provisions of ORS 12.155 and, accordingly, the Statute of Limitations was not suspended."

*Ailes v. Portland Meadows, Inc.*, 104 App 115, 125, 799 P2d 203 (1990) (De Muniz, J., dissenting), *rev'd on other grounds*, 312 Or 376, 823 P2d 956 (1991).

therefore directly controlling. Contrary to plaintiff's contention, the fact that the insurer's obligation was contractual, as opposed to statutory, is of no moment. It necessarily follows that the payments were not "advance payments" within the meaning of ORS 12.155.

Because we conclude that ORS 12.155 does not apply, we need not consider the parties' alternative arguments about whether the debtor, in fact, was lulled into believing that the statute of limitations had been tolled. The argument that the lack of notice caused the debtor to misunderstand the effect of the payments assumes the applicability of the notice requirements of ORS 12.155 in the first place.

Affirmed.