Argued and submitted July 5, affirmed September 28, 2005, petition for review denied January 24, 2006 (340 Or 34)

Aquileo AGUILAR
and Maria Aguilar,
*Petitioners,*

*v.*

WASHINGTON COUNTY,
*Respondent.*

2004-193; A128583

120 P3d 514

Lawrence R. Derr argued the cause and filed the brief for petitioners.

Christopher A. Gilmore argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

LANDAU, P. J.

LANDAU, P. J.

Washington County (county) cited petitioners for physically altering two buildings on their property without obtaining building permits and for using the two buildings for storage of various materials in violation of the local code. Petitioners then applied for verification of a nonconforming use. The county denied the application, and the Land Use Board of Appeals (LUBA) affirmed. Petitioners seek judicial review of LUBA's decision, arguing that LUBA misconstrued the statutes that set out what must be proved to establish a nonconforming use. We affirm.

The relevant facts are not in dispute. Petitioners own a parcel of land approximately 34 acres in size bordering the Tualatin Valley Highway. Two buildings are located on the property. One was built between 1974 and 1980 and the other between 1980 and 1984. Some time after 1984, a roof was constructed over the open area between the two buildings. That roof created a large covered area that was open on two sides and bounded by the two buildings on the other two sides. Some time after 2000, the open sides were enclosed with walls.

The property was first subjected to zoning restrictions in 1974. It is currently zoned "Agriculture-Forestry," and that zoning does not allow grocery storage use. From 1984 until 2000, the property was used by petitioners' predecessors for storage in conjunction with an excavating business. Petitioners purchased the property in 2000, and, the following year, they changed the use of the three-part structure on the property to grocery storage.

The county cited petitioners for adding walls to the open area between the two buildings without having obtained building permits and for using the buildings for storage of food and vending supplies. In response to the citation, petitioners filed an application for verification that their use of the buildings qualified as a nonconforming use, that is, a use that is permissible in spite of any contrary zoning restrictions because the use predated any applicable zoning restrictions. The county hearings officer concluded that, although petitioners established that their predecessor used

the buildings for storage, they did not establish that such use was lawful at the time the first zoning ordinances went into effect, as required by the Washington County Community Development Code.

Petitioners appealed to LUBA, arguing that, under ORS 215.130, once they proved 20 years of continuous use before their application for verification of a nonconforming use, the county was prohibited from requiring them to prove more, that is, that the use was lawful. LUBA rejected petitioners' argument, concluding that the statute permits the county to require proof not only that there were 20 years of continuous use but also that the use was lawful at the time the zoning went into effect. On review, petitioners argue that LUBA misread the statutes. The county responds that LUBA was precisely correct in reading the statutes to permit the county to require proof of lawful use.

The parties' dispute turns on the meaning of ORS 215.130. In determining the meaning of the statute, we apply the familiar rules of interpretation described in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). We begin with an examination of the text in context and, if necessary, resort to legislative history and other aids to construction. *Id.* In examining the text of the statute, we consider, among other things, any prior judicial construction of the statute. *Meoli v. Brown*, 200 Or App 44, 48, 114 P3d 507, *rev den*, 339 Or 406 (2005).

ORS 215.130 describes the conditions under which a nonconforming use may be established and continued. The portions of the statute that are pertinent to the issues in this case are as follows:

"(5)   The lawful use of any building, structure or land at the time of the enactment or amendment of any zoning ordinance or regulation may be continued.

"* * * * *

"(7)(a)   Any use described in subsection (5) of this section may not be resumed after a period of interruption or abandonment unless the resumed use conforms with the requirements of zoning ordinances or regulations applicable at the time of the proposed resumption.

"* * * * *

"(10)   A local government may adopt standards and procedures to implement the provisions of this section. The standards and procedures may include but are not limited to the following:

"(a)   For purposes of verifying a use under subsection (5) of this section, a county may adopt procedures that allow an applicant for verification to prove the existence, continuity, nature and extent of the use only for the 10-year period immediately preceding the date of application. Evidence proving the existence, continuity, nature and extent of the use for the 10-year period preceding application creates a rebuttable presumption that the use, as proven, lawfully existed at the time when the applicable zoning ordinance or regulation was adopted and has continued uninterrupted until the date of application.

"* * * * *

"(11)   For purposes of verifying a use under subsection (5) of this section a county may not require an applicant for verification to prove the existence, continuity, nature and extent of the use for a period exceeding 20 years immediately preceding the date of application."

To paraphrase the foregoing in more manageable portions, subsection (5) makes a general declaration that the "lawful use" of a building, structure, or land that exists at the time a zoning ordinance went into effect "may be continued."

Subsection (7) then describes what happens if such a lawful use has been interrupted or abandoned. The law provides that, when the use has been interrupted or abandoned, the right to continue it as before the imposition of the zoning ordinance ceases, and any resumption of the use must conform to the restrictions of the zoning ordinance.

Subsection (10) then permits local governments to adopt standards and procedures to implement the nonconforming use statute. It provides that those standards and procedures may include a rebuttable presumption on which applicants for verification of a nonconforming use may rely in certain circumstances. The statute provides that, if the applicant proves the existence, continuity, nature, and extent of

the use for the 10-year period before the application for verification, there is a rebuttable presumption that the use lawfully existed at the time the zoning ordinance or regulation first was adopted, even if the ordinance or regulation was adopted more than 10 years before the application. It is important to note that subsection (10) gives local governments the option to permit applicants to satisfy their burden of proof by the rebuttable presumption that the statute describes. It does not require the local governments to do anything, nor does it prohibit them from doing anything.

In contrast, subsection (11) prohibits a county from requiring an applicant for verification of a nonconforming use to prove the "existence, continuity, nature and extent of the use" for a period longer than 20 years before the date of the application.

The foregoing summary of ORS 215.130 is not in dispute. What is in dispute is precisely what is prohibited by subsection (11) when it provides that a county may not require an applicant to prove the "existence, continuity, nature and extent of the use" for a period of more than 20 years. The local development code in this case requires that applicants must prove not only that the use was continuous for the required period of time, but also that the use was *lawful when established*, even if that was more than 20 years prior. Both the county and LUBA concluded that ORS 215.130 does not prohibit requiring such proof. Petitioners, on the other hand, argue that, once they have established the "existence, continuity, nature and extent of the use" for 20 years, they have done all that the law provides that the county may require of them and that proof of the lawfulness of the use may not be required.

We conclude that the county and LUBA are correct. To begin with, it must be recalled that the statute declares in subsection (5) an overarching policy that "[t]he *lawful use* of any building, structure or land" at the time a zoning ordinance or regulation goes into effect may be continued. (Emphasis added.) Not just any use that may have existed at the time the zoning ordinance or regulation goes into effect may be continued—only lawful uses at that time.

Moreover, nothing in subsection (11) prohibits a county from requiring proof of the lawfulness of the use at the time a zoning ordinance or regulation went into effect. Subsection (11) is a prohibition; it states what a county may *not* require of an applicant for verification of a nonconforming use. In that respect, the statute provides that a county may not require proof of the "existence, continuity, nature and extent" of a use for more than 20 years before the date of the application. It says nothing about the lawfulness of the use at the time of a zoning regulations' effective date. That suggests that the legislature did not intend to prohibit a county from requiring proof of the lawfulness of the use.

That suggestion appears to be borne out by reference to subsection (10), which describes the rebuttable presumption that local governments are permitted to employ in evaluating applications for verification of nonconforming uses. The phrasing of the statute describes the rebuttable presumption as applying both to the existence and continuity of the use and to its lawfulness, suggesting that they are different things. In light of that phrasing, the legislature's omission of any reference to the lawfulness of a use in the prohibition that is subsection (11), while certainly not dispositive, is at least indicative of an intention not to prohibit requiring proof of lawfulness of the use.

Consistent with what the text appears to suggest is our opinion in *Lawrence v. Clackamas County*, 180 Or App 495, 43 P3d 1192, *rev den*, 334 Or 327 (2002). In that case, the petitioner owned a parcel on which she operated a go-kart track. The previous owner had established the go-kart business in 1960. Four years later, however, the county adopted a zoning ordinance that prohibited that use. Between 1969 and 1971, the go-kart operation was discontinued. The petitioner purchased the property in 1971 and resumed the go-kart operation.

In 1998, the petitioner applied for verification that the track was a permissible nonconforming use. The county concluded that it was not a permissible nonconforming use, because the use had been interrupted for two years between 1969 and 1971. In the meantime, the legislature enacted

what is now ORS 215.130(11), which, as we have noted, prohibits a county from requiring an applicant from proving the "existence, continuity, nature and extent of the use" for a period more than 20 years preceding the application.

Following the enactment of that law, the petitioner filed a second application for verification, proved 20 years of continuous operation of the go-kart track, and argued that she had established all that the law required. The county concluded that the petitioner's application was precluded by the unsuccessful application two years earlier. LUBA disagreed, and we affirmed LUBA. We explained that

"issue preclusion does not apply unless the issue in the two proceedings is identical. In the most generic terms, the questions raised by both petitioner's 1998 application and her 2000 application was whether petitioner's go-kart track is a legal nonconforming use. However, the intervening enactment of ORS 215.130(11) dramatically altered the legal scope and content of the issue to be determined. In reality, the issue is not the same.

"Before enactment of ORS 215.130(11), under the law in effect when petitioner's previous application was filed, a petitioner seeking to verify a nonconforming use had to prevail on the issue of whether the use was lawful when it began and whether it had ever been interrupted or abandoned. *After the enactment of ORS 215.130(11), a petitioner seeking to verify a nonconforming use has to demonstrate only that the use was lawful when it began, and that it has not been interrupted or abandoned in the 20 years immediately preceding the date of the application.*

"In sum, because of the enactment of ORS 215.130(11), any abandonment of the nonconforming use in the late 1960s and early 1970s is not relevant to any issue in this proceeding. *That is so because the only issues in this proceeding are whether the use was lawful when it began (there is no dispute that it was) and whether the use has continued uninterrupted between 1980 and 2000.*"

*Lawrence*, 180 Or App at 504 (citations omitted; emphasis added).

The decision plainly interprets subsection (11) of ORS 215.130 to have no effect on the authority of a county to require proof of the lawfulness of a use at the time a zoning

ordinance or regulation went into effect. To the contrary, it makes clear that the law contemplates that an applicant who wishes to prove the existence of a nonconforming use must establish two predicates, namely, that a use continued uninterrupted for the specified period of time and that the use was lawful at the time a zoning ordinance or regulation went into effect.[1]

■ Petitioners in this case acknowledge that such is the import of our decision in *Lawrence*. They argue, however, that the portion of the opinion concerning the meaning of subsection (11) was not necessary to the disposition of the case and, in any event, it was wrong. Petitioners do not explain, and we do not understand, the assertion that our construction of subsection (11) was unnecessary to the disposition of the case; our comparison of the requirements of subsection (11) with the preexisting law was the linchpin of our decision. As for the correctness of the decision, we do not lightly overrule our own statutory interpretations. Ordinarily, we regard them as binding precedent unless they are plainly wrong. *Newell v. Weston*, 156 Or App 371, 380, 965 P2d 1039 (1998), *rev den*, 329 Or 318 (1999). In this case, petitioners have suggested no basis for a conclusion that *Lawrence* was plainly wrong.

Assuming for the sake of argument that the statute is ambiguous, any doubt as to the intended meaning of subsection (11) of ORS 215.130 is eliminated by the legislative history. Subsection (11) was adopted by the 1999 Legislative Assembly as Senate Bill (SB) 470. It was introduced by Senators Beyer and George at the request of Oregonians in Action. At the first hearing on the bill before the Senate Water and Land Use Committee, the executive director of Oregonians in Action explained its intended effect in the following terms:

---

[1] There does appear to be some "slippage" in the phrasing of the second of the two requirements in that, although the ordinance at issue in that case and ORS 215.130(5) both refer to the lawfulness of the use at the time the zoning ordinance or regulation went into effect, the opinion refers to establishing the lawfulness of the use "when it began." *Lawrence*, 180 Or App at 504. The significance of that difference in phrasing—if any—does not affect our disposition of this case.

## "BACKGROUND

"State and local land use laws have changed dramatically over the past thirty years. Many times a landowner establishes a legal use on his or her property, only to have the land use laws change, making such use illegal. Although the use was legal at its inception, changes in land use laws make the original use on the property a 'nonconforming' use.

"Prior to 1997 Oregon landowners had to prove continual use of a property from the time the use became nonconforming through the present day. In some cases this can be thirty-five years or more. The 1997 legislature made amendments to ORS 215.130 by allowing county governments the option to require a landowner to only prove 10 years of continual use on the property.

"The problem is that not all county governments have taken advantage of the new statutes, and in some cases have required that landowners prove several decades of continual use. Simply because of the length of time or incomplete records, landowners may know that the use has been continual, but cannot document it.

## "SB 470

"Senate Bill 470 leaves in place the ability of a local government to verify a nonconforming use by using the 10-year test allowed in the 1997 legislation. What SB 470 adds is a 20-year limitation. *Under SB 470 a landowner must prove two things:*

"*1) That the use, when initiated, was a legal use allowed in the zone and that the landowner complied with the permit requirements to establish the use,* **and**

"*2) That the use has existed continuously for at least the past 10 years,* **but the landowner cannot be required to prove more than 20 years of continual use.**"

Testimony, Senate Water and Land Use Committee, SB 470, Mar 9, 1999, Ex H (letter from Larry George) (emphasis added; boldface in original).

After passing in the Senate, the bill was referred to the House Committee on Water and Environment, where

Dave Hunnicutt, legal counsel for Oregonians in Action, offered the following explanation of the bill:

> "SB 470 makes changes to Oregon's nonconforming use statutes. Essentially what we are doing with 470 is saying that the local government, when determining whether a nonconforming use exists can require the land owner to show two things: *One, that the building was lawfully—or whatever the structure was—was lawfully sited.* Two, that it's been in continuous operation for no more than twenty years—they can't make you go back more than twenty years in other words."

Tape Recording, House Committee on Water and Environment, SB 470, May 10, 1999, Tape 158, Side 1 (statement of Dave Hunnicutt) (emphasis added).

Consistently with our opinion in *Lawrence*, the foregoing testimony explains that the statute was intended merely to establish a limit on the period of time that an applicant must prove that a use continued uninterrupted. It further explains that the law was not intended to alter the requirement that, to prove the existence of a nonconforming use, the applicant must establish its lawfulness before the zoning ordinance or regulation went into effect.[2]

In this case, petitioners established that they or their predecessors used the buildings on their property for storage of various goods for at least 20 years before the application for verification of a nonconforming use. They did not, however, establish that their use of the buildings in that fashion was lawful in 1974, when the relevant zoning ordinances went into effect, as required by the local development code. LUBA and the county correctly determined that ORS 215.130(11) does not preclude the local development code from requiring such proof. It necessarily follows that LUBA

---

[2] Again, there is a small discrepancy between the phrasing of the statute, which refers to lawfulness of a use at the time a zoning ordinance or regulation went into effect, and the testimony, which refers to the lawfulness of a use "when initiated." Whether there is significance to the difference in phrasing need not be determined at this juncture. In either event, there must be proof of the lawfulness of the activity before the zoning ordinance or regulation went into effect, and, in this case, there was no such evidence.

correctly affirmed the county's decision to deny petitioners' application.

Affirmed.