GARRETT, J.
*377 Appellant seeks reversal of an order of civil commitment. On appeal, citing ORS 426.232(2),[1] she contends that the trial court was required to dismiss the commitment case because appellant was involuntarily hospitalized for more than five days without a hearing. We agree and reverse.
The facts are procedural and not in dispute. On July 20, 2016, appellant was brought to Salem Hospital and was held there against her will under ORS 426.232, which allows "physician hold" at a hospital. Subsection (2) of that statute requires that she had to be released within five judicial days, or by July 27. See ORS 174.120 (computation of judicial days).
Although ORS 426.234 requires "immediate" notification of a physician hold to certain local mental health personnel and the circuit court, the trial court did not receive notice of appellant's detention until July 25. On July 26, the court issued a citation under ORS 426.090 scheduling a hearing for July 28 over appellant's objection. Appellant was not released as required by July 27 and, on that day, moved the court to release her. At the July 28 hearing, appellant moved to dismiss the case, arguing that the court's jurisdiction had expired when appellant was detained at the hospital for longer than the five judicial days allowed by ORS 426.232(2). The trial court denied the motion, reasoning that it had complied with the time requirements of other procedural statutes, and ordered appellant to be committed for a period of time not to exceed 180 days.[2] On July 29, the trial court denied appellant's motion for release.
*791 *378 On appeal, appellant renews her argument that the trial court was required to dismiss the case for lack of jurisdiction because she was not timely released from the physician hold. In support, she cites State v. J. D. , 208 Or. App. 751, 752, 145 P.3d 336 (2006), in which we concluded that "the trial court erred in failing to dismiss the case when appellant was not released after the expiration of five days on the initial hold." The state argues that dismissal was not required because, although appellant was improperly detained for longer than five days, the trial court held a hearing within five judicial days of the trial court's issuing of a citation , as required by ORS 426.095(2)(a). In other words, the state contends that, whatever the remedy may be for violation of ORS 426.232(2), it is not dismissal of a court proceeding, so long as the court acts promptly, in compliance with ORS 426.095 and other procedural statutes, upon receiving notice of the detention.
We have consistently reversed civil commitment orders where appellants were held for longer than five judicial days in violation of ORS 426.232(2). See, e.g. , State v. C. J. W. , 289 Or. App. 63, 65, 407 P.3d 979 (2017) ; State v. B. L. H. , 287 Or. App. 885, 886, 403 P.3d 538 (2017) ; State v. W. B. R. , 282 Or. App. 727, 729, 387 P.3d 482 (2016) ; State v. J. N. , 279 Or. App. 607, 608, 377 P.3d 695 (2016) ; State v. P. G. , 225 Or. App. 211, 212, 200 P.3d 614 (2009) ; J. D. , 208 Or. App. at 752, 145 P.3d 336. Failure to dismiss a commitment case following such a violation has been held to constitute plain error. See, e.g. , State v. R. W. S. , 292 Or. App. 405, 406, 419 P.3d 804 (2018) ; State v. E. R. , 283 Or. App. 282, 283, 387 P.3d 497 (2016) (trial court plainly erred in failing to dismiss the case when the appellant was held for more than 18 days without a hearing).
The state argues that those cases are distinguishable or wrongly decided. The state contends that nothing in ORS chapter 426 grants courts the authority-let alone requires courts-to dismiss commitment proceedings when ORS 426.232(2) is violated. The state distinguishes our *379 previous cases on the basis that they all involved specific concessions by the state that proceedings should have been dismissed. Alternatively, the state argues that we should overrule those decisions as plainly wrong. See State v. Civil , 283 Or. App. 395, 405-07, 388 P.3d 1185 (2017) (providing the standard for overruling our own precedents).
Whether dismissal of a commitment case is required following a violation of ORS 426.232(2) is a question of law that we review for legal error. See J. D. , 208 Or. App. at 752, 145 P.3d 336.
At the outset, we reject the state's argument that the cited precedents are distinguishable merely because they involved concessions of error. We need not accept concessions if they are incorrect, and, in at least some of those cases, we expressly agreed that dismissal was the appropriate outcome. See, e.g. , B. L. H. , 287 Or. App. at 886, 403 P.3d 538 ("We therefore agree with and accept the state's concession that the trial court erred in failing to dismiss appellant's case."); W. B. R. , 282 Or. App. at 729, 387 P.3d 482 ("[W]e agree with the state that the trial court erred in denying appellant's motion [to dismiss], and we reverse the commitment order on that basis."); J. N. , 279 Or. App. at 608, 377 P.3d 695 ("We agree with the state's concession and reverse the order of commitment.").
Therefore, if we are to affirm the trial court's ruling, our past cases applying ORS 426.232 must be overruled. We do not "lightly overrule" our precedents. Civil , 283 Or. App. at 416, 388 P.3d 1185 (quoting Aguilar v. Washington County , 201 Or. App. 640, 648, 120 P.3d 514 (2005), rev. den. , 340 Or 34, 129 P.3d 183 (2006) ). Rather, a case must qualify as "plainly wrong, a rigorous standard grounded in presumptive fidelity to stare decisis ." Id. at 406, 388 P.3d 1185 (internal quotation marks omitted). For a decision to be "plainly wrong," it must first be wrong, which requires "at least some (re)examination of the dispositive substantive issue *792 and our precedent's consideration of that issue, so that we can appreciate the reasoning that led us to the earlier conclusion." Id. "Such revisiting of statutory construction precedent, while necessarily quite rare, usually occurs when our precedent cannot be reconciled with the result that would follow application of a prescribed (or subsequently prescribed) mode of analysis or when we are *380 presented with a qualitatively new, potentially dispositive contention not previously raised and addressed." Id. at 416, 388 P.3d 1185.
In arguing that our precedents are "plainly wrong," the state points out that all of them failed to expressly construe ORS 426.232. And, because the state conceded error in those cases, we were never presented with the particular argument that the state makes here: that nothing in ORS 426.232 requires, or even authorizes, the dismissal of proceedings just because a person is held for longer than five judicial days without a hearing.
For the reasons explained below, the state has not persuaded us that our past cases were wrongly decided, let alone "plainly wrong."
It is true, as the state points out, that ORS 426.232(2), by its terms, addresses only the detention of a person under a physician hold, and does not expressly address the remedy for violation of the five-judicial-day period. However, the surrounding context suggests that the legislature intended the five-judicial-day rule to be not merely an obligation on physicians and hospitals to release people after a designated period of time, but a procedural prerequisite to lawful commitment proceedings. Under various sections of ORS chapter 426, physician holds are a way to trigger commitment proceedings. See ORS 426.234 (duties of facility staff; court proceedings); ORS 426.237 (prehearing detention; commencement of court proceedings); ORS 426.070 (initiation of procedures; notice; recommendation; warrant of detention). The five-judicial-day rule accordingly appears not just in ORS 426.232, but also in the provisions of ORS chapter 426 that require courts to commence commitment proceedings upon being notified of a physician hold. See ORS 426.234(4) (requiring courts to immediately commence commitment proceedings upon receiving notice that a person is being held in a physician hold, and providing that, except in circumstances not present in this case, "a person shall not be held under ORS 426.232 *** for more than five judicial days without a hearing being held under ORS 426.070 to 426.130"); ORS 426.237(4)(b) (requiring courts to immediately commence commitment proceedings when mental health personnel recommend doing so in an investigation *381 report during a physician hold, and providing that "[i ]n no case shall the person be held longer than five judicial days without a hearing under this subsection" (emphasis added) ).
In the same way that courts lack authority to hold hearings after five judicial days following a citation, see ORS 426.095(2)(c), the fact that the five-judicial-day rule appears in ORS 426.234 and ORS 426.237 suggests that the legislature envisioned that courts similarly would lack authority to "commence proceedings" when a person is involuntarily hospitalized for longer than five judicial days. The statutory requirement that physicians give notice "immediately" of an involuntary hold, taken together with the requirement that courts commence proceedings "immediately" upon receiving such notice, plainly contemplate that commitment actions must proceed rapidly following the initial deprivation of a person's liberty, consistent with the extraordinary nature of such a deprivation. ORS 426.234(2) - (4) ; cf. also Addington v. Texas , 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) ("This Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."). In this case, even though the trial court acted within five days of receiving notice, as required, several days of detention had already occurred when that notice was given. If notice of appellant's detention had been given "immediately," as required, the court proceedings would have commenced earlier. Thus, because appellant was not released, but rather was held involuntarily until the hearing, the unexplained delay in giving notice deprived appellant of additional days of liberty, contrary to legislative policy.
The state advances no theory on appeal of what a meaningful remedy for such a violation *793 should be, if not dismissal. Moreover, dismissal seems to be the only practically effective remedy. Because the time limitations in ORS 426.070 to 426.130 require commitment proceedings to take place within just days after the beginning of the physician hold, other remedies-like release-would be ineffective in deterring many violations of ORS 426.232(2) in which a person is held for only a couple of days longer than permitted. The facts of this case are illustrative: Appellant moved for *382 release on the sixth judicial day of her hold, but, because a hearing under ORS 426.095 was already scheduled for the seventh judicial day, the court found her mentally ill and committed her to the Oregon Health Authority before addressing whether appellant should be released under ORS 426.232(2). Thus, due to the speedy nature of the proceeding, appellant was unable to enforce her rights under ORS 426.232(2). We doubt that the legislature, in imposing the five-judicial-day rule, intended a remedy that was ineffective at protecting persons against such violations.
For those reasons, the state has failed to persuade us that our cases requiring dismissal for violations of ORS 426.232(2) should be overruled. The trial court erred in denying the motion to dismiss.
Reversed.

ORS 426.232(2) provides:
"When approving a person for emergency care or treatment at a nonhospital facility under this section, the licensed independent practitioner shall notify immediately the community mental health program director in the county where the person was taken into custody and maintain the person, if the person is being held at a hospital, for as long as is feasible given the needs of the person for mental or physical health or safety. However, under no circumstances may the person be held for longer than five judicial days."

As an alternative basis for its ruling, the trial court explained that, even if appellant was correct that she potentially was entitled to dismissal under ORS 426.232(2), an exception under a different statute, ORS 426.095(2)(c), allowed the court to proceed because the court found good cause for postponing the commitment hearing and continuing to detain appellant in the meantime. We reject the court's reasoning, however, because continued involuntary retention under ORS 426.095(2)(c) expressly applies only if postponement is requested by the detained person (or that person's lawyer), which did not occur here.