Submitted September 24, 2019, affirmed July 14, 2021

In the Matter of D. A.,
a Person Alleged to have Mental Illness.
STATE OF OREGON,
*Respondent,*

*v.*

D. A.,
*Appellant.*

Clackamas County Circuit Court
18CC05097; A168964

495 P3d 176

Appellant appeals from a judgment of involuntary civil commitment based upon a determination that he is a person with a mental disorder that renders him a danger to others. He argues that the trial court (1) erred in committing him absent clear and convincing evidence that he was dangerous to others; (2) plainly erred by not serving the citation 24 hours before the hearing; and (3) plainly erred by failing to dismiss the case when he was held longer than five judicial days prior to the commitment hearing. *Held*: There was legally sufficient evidence to find that appellant has a mental disorder that makes him dangerous to others. There is nothing in the text or context of ORS 426.090 that requires the citation to be served at least 24 hours before the hearing. Finally, even if the court plainly erred in failing to dismiss the hearing within five judicial days of the initial hold, appellant did not challenge the lawfulness of the second hold which was based upon new conduct that demonstrated a risk for violence. Given the new conduct, any error was not grave enough to warrant the exercise of discretion to correct the error.

Affirmed.

Jeffrey S. Jones, Judge.

Joseph R. DeBin and Multnomah Defenders, Inc., filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Philip Thoennes, Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Presiding Judge, and DeVore, Judge, and Powers, Judge.

POWERS, J.

Affirmed.

**POWERS, J.**

In this civil commitment proceeding, appellant appeals from a judgment committing him to the custody of the Mental Health Division for a period not to exceed 180 days and an order prohibiting the purchase and possession of firearms. On appeal, he contends that the trial court (1) erred in committing him absent clear and convincing evidence that he was dangerous to others; (2) plainly erred by not serving the citation 24 hours before the hearing; and (3) plainly erred by failing to dismiss the case when he was held longer than five judicial days prior to the commitment hearing. We affirm.

Appellant has not asked us to exercise our discretion to review the cause *de novo* and this is not an "exceptional case" in which we would do so. *See* ORAP 5.40(8)(c); *State v. B. B.*, 240 Or App 75, 79 n 2, 245 P3d 697 (2010). Accordingly, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *State v. M. J. F.*, 306 Or App 544, 545, 473 P3d 1141 (2020) (internal quotation marks and citations omitted). In so reviewing, we are bound by the court's findings of historical fact that are supported by any evidence in the record. *Id.* We state the facts in accordance with that standard.

Appellant has a longstanding diagnosis of schizoaffective disorder and schizophrenia. He has also had a history of stalking that began in his 20s. That behavior led to stalking orders in 1993 and 2015 and an arrest for stalking in 2017. Further, appellant was civilly committed in 2015 and again in 2017 after he engaged in stalking behavior— each time involving a different person.

Appellant's current civil commitment began when he engaged in stalking behavior toward a new individual. Sheriff's deputies were called by the general manager of a gym, who reported that appellant was stalking one of the gym's fitness instructors. Upon their arrival, the deputies found appellant sitting in his car waiting for the instructor. Appellant told the deputies that he had not slept in

two weeks because he was constantly thinking about the instructor. He "rambled on" about how much he loved the instructor, that he could not live without her, and that he would do anything for her. Based on his behavior at the gym, appellant was placed on a peace-officer's hold by the deputies who then transported him to the hospital.

At the hospital, appellant was evaluated by a physician and then placed under a hold that triggered the filing of a "notification of mental illness" (NMI) with the court on August 28, 2018. In the NMI, the physician explained that appellant is imminently dangerous to himself or others based upon a belief that "[t]he patient made a vague reference that he intended to kill himself while be[ing] arrested for violating a restraining order against a trainer at a local gym." The physician also explained that appellant was in need of emergency care or treatment for mental illness based upon that same conduct. After appellant's statements regarding self-harm and the filing of the NMI, appellant was transferred for treatment to Cedar Hills Hospital, a mental healthcare facility.

After the NMI was filed, a county mental health investigator was assigned to determine whether appellant was in need of commitment, other treatment, or could be released without the need for a commitment hearing. The investigator assigned to appellant's case previously had worked with him a year before and had known him for several years. While at Cedar Hills, appellant was inconsistent with his medication compliance but did not demonstrate any imminent danger. After three days, the investigator determined that a civil commitment hearing was not necessary. Thus, no hearing was scheduled.

Before appellant was released, however, appellant assaulted three other patients at the facility. Appellant believed that the other patients were interfering with his ability to get better and therefore they were "trash" and that he needed to "take out the trash." A psychiatric nurse practitioner at the facility observed that appellant exhibited symptoms of paranoia and delusions, especially regarding his relationship with the fitness instructor. She also

noted that appellant refused to take medication and was decompensating.

The investigator interviewed appellant on two occasions while appellant was at Cedar Hills. The investigator had previously worked with appellant in similar situations and appellant had not been aggressive during those encounters. After the incident with the other patients, however, appellant was "very aggressive" toward the investigator and hospital staff. Appellant yelled "No, no, no" and "Don't come in" when the investigator tried to enter the secluded area where appellant had been placed following the assault on the other patients. Appellant ran at the investigator and nurse when they attempted to enter the safety suite to speak with him. He grabbed the door, pulled it back, then attempted to slam it shut on the investigator and nurse with extreme force, which nearly injured the investigator and a hospital staff member who had to jump out of the way to avoid injury. The investigator and nurse both noted that during this hospitalization, appellant was exhibiting aggression toward people he perceived as interfering with his goal of pursuing his relationship with the gym fitness instructor.

Based on the assaultive behavior directed at other patients and staff, another hold was initiated and a second NMI was filed by a different evaluating physician, who attested to conduct regarding harm to others (which was different from the harm-to-self conduct that was the basis for the first NMI). The second evaluating physician described the behavior that caused a belief that appellant was imminently dangerous to himself or others and appellant's statement that "he needs to clean the unit. He said, 'the trash has been building up and it's time to take it out.' He assaulted 3 people here." Further, the physician explained that the behavior or symptoms indicating that appellant has a mental disorder and is in need of emergency treatment was that he "presents psychotic and physically assaultive towards three other patients." In addition to the evaluating physician, the investigator and the psychiatric nurse practitioner also believed that appellant was a danger to others, due to his stalking behavior, delusions, decompensating behavior, and increased aggression. Further, appellant told Cedar

Hills staff that he would continue to be physically violent toward other patients if he was released from seclusion.

The second NMI kept appellant detained at the facility as of September 4, which would have been on day four of the original hold. On September 10, the trial court issued a citation for a hearing on September 11, and the citation contained information concerning the specific reasons appellant was alleged to have a mental illness and the right to subpoena witnesses as required by ORS 426.090. The court held appellant's commitment hearing the next day.

Based on the foregoing evidence, the trial court concluded that appellant was a danger to others. The court noted that appellant was violent toward the county mental health investigator and toward other patients, refused to take medication, and was decompensating while at the mental healthcare facility. The court also found that appellant was a threat to the fitness instructor, as evidenced by appellant's behavior and statements to the sheriff's deputies about not sleeping for two weeks because he was thinking about the fitness instructor.

Thus, the trial court ordered appellant committed to the Mental Health Division for a period not to exceed 180 days based upon a finding that appellant suffers from a mental disorder and is dangerous to others.

In appellant's first assignment of error, he contends that there was legally insufficient evidence in the record to support the trial court's conclusion that under ORS 426.005(1)(f)(A) appellant's mental disorder made him dangerous to others.

A person may be involuntarily committed for mental health treatment for up to 180 days if, after a hearing, the court determines that he or she is a "person with mental illness." ORS 426.130(1)(a)(C). As relevant to this case, a "person with mental illness" includes a "person who, because of a mental disorder," is "[d]angerous to self or others." ORS 426.005(1)(f)(A). The state must prove the statutory requirements of involuntary commitment by clear and convincing evidence. ORS 426.130(1)(a).

Whether a person is a danger to others is determined by the person's condition at the time of the hearing as it is understood in the context of the person's history. *See, e.g.*, *State v. L. R.*, 283 Or App 618, 625, 391 P3d 880 (2017). A person can be committed on "danger to others" grounds only if evidence permits a rational factfinder to conclude that a mental disorder makes the person

> "highly likely to engage in future violence towards others, absent commitment. *** [C]onclusions *** based on conjecture are not enough; actual future violence must be highly likely. Evidence of past violent acts must provide a foundation to predict future dangerousness, not merely describe past isolated incidents."

*State v. E. J. J.*, 308 Or App 603, 612, 479 P3d 1073 (2021) (quotation marks, bracketing, and citations omitted). That standard is met in this case.

Appellant had a mental disorder that was causing him to be paranoid and delusional, engage in stalking behavior, and act violently. Further, the trial court determined that appellant's refusal to take medication and resulting decompensation were contributing to his increased aggression and that, absent commitment, appellant was dangerous to others. In short, the record in this case is legally sufficient to support the trial court's decision that, at the time of the hearing, appellant was a danger to others.

Next, we address appellant's two unpreserved challenges contending that the trial court plainly erred in failing to serve a citation within 24 hours of his hearing and that the trial court plainly erred in failing to hold a hearing within five judicial days of when he was first detained. Plain-error review involves a two-step inquiry in which we first determine whether the error is plain, and second, whether to exercise our discretion to consider the error. ORAP 5.45; *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991). First, to constitute plain error, the error must (1) be an error of law, (2) be obvious, *i.e.*, not reasonably in dispute, and (3) be apparent on the record without requiring the court to choose among competing inferences. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013) (citing cases). Second, if the plain-error test is satisfied, we must

then determine whether to exercise our discretion to review the error. *Id*. at 630 ("That discretion entails making a prudential call that takes into account an array of considerations, such as the competing interests of the parties, the nature of the case, the gravity of the error, and the ends of justice in the particular case.").

In his second assignment of error, appellant contends that the trial court plainly erred in issuing the citation less than 24 hours before the hearing. Specifically, appellant argues that "the circuit court's failure to serve a citation and provide the investigation report at least 24 hours prior to the hearing not only violated ORS 426.074, ORS 426.080, and ORS 426.090, but also the due process clause of the U.S. Constitution."[1] The state remonstrates that appellant waived his right to challenge the validity of the citation under ORCP 21 G(1) (providing that certain defenses, including insufficiency of service of summons or process, are waived unless raised in either the responsive pleading or a motion to dismiss). Further, the state contends that, because nothing in text or context of those statutory provisions or due process require service of the citation at least 24 hours before a hearing, the trial court did not plainly err.

We recently rejected a similar argument in *State v. C. P.*, 310 Or App 631, 640-41, 486 P3d 845 (2021) (concluding that, in the context of an intellectual disability commitment hearing, the trial court did not plainly err when it did not *sua sponte* dismiss the proceeding when the citation was not served more than 24 hours before the hearing). Like the appellant in *C. P.*, appellant did not file a reply brief addressing ORCP 21 G(1), nor does appellant point to

---

[1] ORS 426.074(3) provides, in part, that a "copy of the investigation report shall be provided as soon as possible, but in no event later than 24 hours prior to the hearing, to the person and to the person's counsel."

ORS 426.080 provides, in part, that "[t]he person serving *** the citation provided for by ORS 426.090 shall, immediately after service thereof, make a return upon the original *** citation showing the time, place and manner of such service and file it with the clerk of the court."

ORS 426.090 requires the trial court to "issue a citation to the person alleged to have a mental illness stating the nature of the information concerning the person and the specific reasons the person is believed to be a person with a mental illness *** prior to the [commitment] hearing."

any text or context within the statutory framework that requires service of a citation at least 24 hours before a hearing. Furthermore, in mental illness commitment hearings, unlike intellectual disability commitment hearings, the legislature specified that a copy of the investigative report shall be provided as soon as possible, "but in no event later than 24 hours prior to the hearing," under ORS 426.074(3). It did not, however, specifically provide a 24-hour requirement in the text of ORS 426.090, which provides that the court must issue the citation "prior to the hearing." Here, appellant does not dispute that he received the citation prior to the hearing, and we will not insert a 24-hour requirement where one does not exist. *See, e.g.*, ORS 174.010 ("In the construction of a statute, the office of a judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted or to omit what has been inserted[.]"). More to the point, it is not obvious that the trial court violated any of the cited statutory provisions or due process in the course of issuing the citation, and therefore the trial court did not plainly err.

Finally, in his third assignment of error, appellant contends that the trial court plainly erred in failing to dismiss the case, because a hearing was not held within five days of appellant's initial hold. We conclude that, even if it was error to hold appellant for more than five judicial days in violation of ORS 426.232(2), we decline to exercise our discretion given the circumstances of this case.

ORS 426.232(1) permits a licensed independent practitioner to detain a person in a health care facility when the practitioner believes that the person is a danger to self or others and is in need of emergency care or treatment for mental illness. ORS 426.232(2) provides that, when a person is approved for emergency care or treatment as provided by ORS 426.232(1)(b), "under no circumstances may the person be held for longer than five judicial days." We have consistently reversed civil commitment orders where the appellant was held for more than five judicial days in violation of ORS 426.232(2). *See State v. L. O. W.*, 292 Or App 376, 378, 424 P3d 789 (2018) (citing cases). Further, the failure to dismiss a commitment case following a violation of ORS 426.232(2)

can constitute plain error. *Id.* Appellant directs us to our previous cases including *L. O. W.*, in which we adhered to our long line of precedent first established in *State v. A. E. B.*, 196 Or App 634, 635, 106 P3d 647 (2004), and *State v. J. D.*, 208 Or App 751, 752, 145 P3d 336 (2006). The question in this case is whether the trial court plainly erred by failing to *sua sponte* dismiss the proceeding where the commitment hearing was held five judicial days after a second physician's hold but nine judicial days after the initial physician's hold and, if so, whether we will exercise our discretion to correct that error.

As noted earlier, appellant was first detained on a physician's hold on August 28. On "Day 3" following that hold, the investigator "determined that no civil commitment hearing would be recommended." After that determination but while the initial hold was still in effect, appellant assaulted other patients and was placed into seclusion. As a result, a second physician's hold was issued on September 4, four judicial days after the initial hold. The trial court ordered the issuance of a citation on September 10, and the commitment hearing was held on September 11, which was nine judicial days after the initial physician's hold and five judicial days after the second physician's hold.

Appellant does not dispute that his civil commitment hearing commenced within five judicial days of the second physician's hold, nor does he argue that the second physician's hold was issued in violation of ORS 426.232(1) or that it was otherwise improper. Rather, appellant argues that he could not be held under ORS 426.232 for more than five judicial days following the initial hold, notwithstanding any subsequent hold issued under the same statute for different conduct. Appellant further argues that the trial court plainly erred in failing to dismiss his case and contends that the error requires reversal. The state contends that the trial court did not plainly err in failing to dismiss the civil commitment proceeding, because it is not obvious that the court was required to do so under the circumstances of this case.

As an initial matter, it is not entirely clear under the circumstances of this case that the trial court plainly

erred. It is true that in *L. O. W.* and other cases, we have concluded that it is error—indeed, plain error—for a trial court to hold a commitment hearing where an appellant was held longer than five judicial days without a hearing. Indeed, we recently explained that the time limit on the hold provision in the civil-commitment framework cannot be circumvented by simply placing a new hold on an appellant "who has already been held more than five judicial days without a hearing." *State v. M. Z.*, 307 Or App 755, 756, 476 P3d 1258 (2020). None of those cases, however, presented a scenario in which a subsequent hold was initiated before five judicial days had elapsed and where that subsequent hold was based upon new facts establishing a need for further investigation. That is, unlike a situation where the second hold appears to be an attempt to circumvent procedural safeguards in the statutory framework, this case presents a twist on that situation where the second hold is based on new information establishing a need for further investigation. That important factual difference suggests that this is not the type of case in which the plain-error requirements would be met. *See, e.g.*, *State v. Serrano*, 355 Or 172, 179-80, 324 P3d 1274 (2014), *cert den*, 576 US 1037 (2015) (explaining that the "obviousness" requirement of plain-error review requires an appellant to demonstrate both that (1) the legal principles are "obvious" and beyond reasonable dispute and (2) applying those "obvious" legal principles to the circumstances of the case show that the trial court erred).

In any event, we need not resolve whether the trial court plainly erred by failing to *sua sponte* dismiss the proceeding because, under the circumstances of this case, we would not exercise our discretion to correct any plain error. As noted earlier, in deciding whether to exercise our discretion to correct any plain error, we consider an array of factors including the gravity of the error and the ends of justice. *See Vanornum*, 354 Or at 630. First, where appellant does not challenge the lawfulness of the second hold, which was based on new conduct that demonstrated a risk for violence, any dismissal may have been a Pyrrhic victory, because sufficient evidence existed for an independent hold. *Cf. State v. G. L.*, 238 Or App 546, 558, 243 P3d 469 (2010) (exercising discretion to reverse plain error when the

appellant had a strong interest in having the wrongful commitment reversed and the state and trial court were fully aware of the issues and thus purpose of preservation was served). Second, given the new conduct, we conclude that any error was not grave enough to warrant the exercise of discretion under *Ailes*.

Affirmed.