782 September 5, 2024 No. 637

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of S. L.,
a Person Alleged to have Mental Illness.
STATE OF OREGON,
*Respondent,*

*v.*

S. L.,
*Appellant.*

Multnomah County Circuit Court
22CC06115; A179744

Erin E. Kirkwood, Judge.

Submitted November 8, 2023.

Joseph R. DeBin and Multnomah Defenders, Inc., filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Carson L. Whitehead, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Appellant seeks reversal of an order of civil commitment. On appeal, appellant asserts that he was effectively detained on consecutive holds leading up to a civil commitment hearing that was not held within five judicial days of the commencement of detention, as required by ORS 426.095(2)(b).[1] As a result, he argues, the trial court erred when it did not dismiss his case. We affirm.

We review for legal error. *State v. L. O. W.*, 292 Or App 376, 379, 424 P3d 789 (2018) (citing standard of review for related provision, ORS 426.232(2)). "[W]e view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome," and "we are bound by the court's findings of historical fact that are supported by any evidence in the record." *State v. D. A.*, 313 Or App 328, 329, 495 P3d 176 (2021) (internal quotation marks omitted). We state the facts in accordance with that standard.

Appellant had been residing at an adult assisted living facility since late 2018. On September 18, 2022, appellant began refusing his medications. Soon after, his condition declined; he began throwing water bottles at facility staff and refusing to eat. He was not caring for his personal hygiene, and his psychosis increased.

On September 25, 2022, appellant fell and hit his head. Facility staff contacted 9-1-1 and when paramedics arrived, appellant threatened them and was noncooperative. Appellant was brought to the Legacy Emanuel Medical Center by ambulance on September 26. At that time, appellant had been off his medications for six days and had not eaten in four days. Appellant was diagnosed with dehydration, malnutrition, and electrolyte abnormality. He required IV fluids and was placed on observation status.

---

[1] Civil commitment hearings held by courts under ORS 426.070 are governed by ORS 426.095. ORS 426.095 requires, in relevant part, that "if a person is detained by a warrant of detention under ORS 426.070, a hearing shall be held within five judicial days of the commencement of detention," unless certain parties request a postponement. ORS 426.095(2)(b), (c).

Later that day, appellant was transferred to Unity Center for Behavioral Health (Unity). The medical providers who assessed appellant explained that he was "unable to participate in interview due to actively responding to internal stimuli and acute thought disorganization," and determined that he was imminently dangerous to himself or others or unable to take care of himself due to "acute psychosis and [history] for aggression." A physician identified the following "specific indicators, symptoms, or behaviors" that supported that appellant had a mental disorder and needed emergency care: "[d]isorganized history of commitment, failure to care for self, medication refusal, [and] psychosis."

Over the next few days, appellant's condition did not improve. He refused food, water, and medication, could not care for his basic needs, and continued to demonstrate acute psychosis.

The civil commitment hearing was held on October 3, 2022. Although appellant's status had not improved since admission, the trial court dismissed appellant's case because the state did not supply discovery to appellant as required. Appellant was discharged from Unity the same day.

At the time of appellant's discharge, treating psychiatrist Daniel Sterba "remained concerned about [appellant's] * * * inability to meet his basic needs due to his psychosis, which [he] would qualify as quite severe." Due to those ongoing concerns, Unity coordinated with Project Respond, a county mobile mental health team, before discharging appellant. After formally discharging appellant and before escorting him outside, Sterba informed appellant that he was free to leave. Then, Unity staff escorted appellant, who was in a wheelchair and unrestrained, to a sidewalk near the ambulance bay. Unity staff made no efforts to prevent appellant from leaving, and appellant never attempted to get out of the wheelchair or leave. Instead, he "remained seated, kind of talking to unseen others or to himself, most of the time with his eyes closed or looking around and making comments."

Hospital staff then wheeled appellant toward a Project Respond clinician. Appellant's "feet were kind of

dragging underneath of him. He didn't seem to look like he was aware of what was happening around him." The clinician then conducted an independent examination outside the hospital. She observed that appellant "presented disoriented and with disorganized, unintelligible speech. He was not really able to communicate. His eyes were closed most of the time." She additionally reported that appellant "was responding to \*\*\* visual hallucinations and internal stimuli" and "having a lot of motor agitation, so kind of moving arms and head around and appearing \*\*\* to respond to—\*\*\* he was very distracted by his internal stimuli and he could not answer any of our questions." As a result of appellant's presentation during the examination, the clinician determined that appellant met the criteria for a director's custody hold on the grounds that he was unable to meet his basic needs, and a new Notification of Mental Illness (NMI) was filed.

Appellant was then re-admitted to Unity on October 3, 2022, under a new director's custody hold, due to "agitation, not eating prior to admission, verbal aggression, [inability] to meet basic needs, [and being] disorganized." The "specific indicators, symptoms, or behaviors" supporting that appellant had a mental disorder and needed emergency care included: "disorganized speech [and] behavior, hallucinating, talking to unseen others, agitation, not eating, [and] hx of schizophrenia." Upon readmission, Sterba conducted a new admission evaluation. He defined appellant's chief complaint as "[a]cute exacerbation of chronic schizophrenia resulting in inability to meet basic needs." Sterba reported that while in triage after being readmitted, appellant

> "was sitting in wheelchair, responding to internal stimuli, disorganized in both thought and behavior. When I approached him, he looked at me and said, 'oh the attorney is here. Hey fuck you' and gave me the middle finger. He was unable to describe how he would care for himself, if he had been eating. He could not meaningfully have a conversation. A 2-physician hold/NMI was placed due to inability to care for basic needs."

On October 6, appellant filed a motion to dismiss the October 3 NMI, asserting that the trial court lacked jurisdiction because a hearing had not taken place within

five judicial days as required under ORS 426.095; there were no new allegations to support the new NMI; and "bad faith by the State." Appellant asserted in relevant part:

> "Even though an updated NMI was filed, and the current case is filed under a different number than the previous NMI, this is the same case, with the same facts. The current NMI was conducted in the hospital parking lot for the sole purpose of returning [appellant] to hospital custody. The 'discharge' was a sham. The current NMI is an unlawful extension of the September 26, 2022 NMI."

At the October 6 civil commitment hearing, the court denied appellant's motion to dismiss. The court found that there was a hearing within five days on the first NMI, which resulted in dismissal of appellant's civil commitment. The court additionally found that upon dismissal, appellant's treating psychiatrist "informed [appellant] that he could leave, and Unity began forming a discharge plan." The court explained that at the time, Unity staff "was well aware that [appellant] was in poor condition; and, as [the Project Respond clinician] described it, was [in] severe psychosis." As such, the court determined that it was reasonable for Unity "to form a discharge plan that does not just involve leaving this person on the sidewalk outside." The court explained that, under the discharge plan, Unity "ha[d] Project Respond come and do a subsequent evaluation to determine if another director's hold would be placed." Thus, the court determined, "While these holds were back-to-back, *** they were not without a hearing within those five days on the first hold. We're having a hearing within the five days on the subsequent hold." The court therefore concluded that ORS 426.095(2)(b) had not been violated.

On appeal, appellant argues that the discharge and subsequent NMI on October 3 were "illusory" because Unity impermissibly bypassed his court-ordered dismissal and extended his involuntary commitment by arranging for Project Respond to evaluate him immediately after he was taken outside of the facility. We understand appellant to argue that as a result, the civil commitment hearing on October 6 was not held within five judicial days of September 26, which he views as the date the hold commenced.

"[A] court lacks authority to hold a mental commitment hearing when a person has been involuntarily hospitalized for longer than five judicial days, and a person held longer than five judicial days without a hearing is entitled to dismissal." *State v. B. C.*, 312 Or App 258, 259, 487 P3d 879 (2021). We conclude that appellant was not held longer than five judicial days, and therefore, that the trial court did not err.

Appellant's argument depends on a view of the evidence that the trial court rejected. The trial court found that appellant received a hearing within five days of the September 26 hold and that, because of that hearing, the case was dismissed. The court found that appellant was discharged from Unity. The trial court further found that the hold on October 3 was the result of a determination by Project Respond, after an independent evaluation, and that appellant met the criteria for an NMI and hold. And the court found that the October 6 hearing to address the October 3 hold was held within five judicial days. Those findings are supported by the record.

Appellant does not dispute that he had a hearing on October 3 that resulted in the trial court dismissing his case. And appellant's discharge on October 3 did not amount to a "sham" simply because Unity implemented it in a coordinated manner that took into account appellant's acute psychosis and inability to care for his basic needs. This case is thus meaningfully different than cases in which "the hold provisions of the civil commitment statutes" were impermissibly "bypassed by placing a new hold on an appellant in order to restart the five-day time period." *State v. R. O. W.*, 307 Or App 757, 758, 476 P3d 1259 (2020) (concluding that the trial court erred in failing to dismiss a case where the appellant was involuntarily committed under subsequent holds for longer than five days without a hearing); *see also State v. J. D.*, 208 Or App 751, 752, 145 P3d 336 (2006) (same). We therefore conclude that the trial court did not err.

Affirmed.